ZANE and another *v*. PECK BROTHERS & Co.

*(Circuit Court, D. Connecticut.* June 25, 1881.)

1. LETTERS PATENT—SELF-CLOSING FAUCETS—INFRINGEMENT—ANTICIPATION.

Letters patent for an improvement in self-closing faucets, granted June 27, 1865, to Nathaniel Jenkins, are infringed by a faucet differing from the device used by D'Este & Co. only in the particular that what was in that device a swivel, is in this an extension of the screw follower; but not anticipated by the French patent granted to Samy and Lenormand, in 1861, in whose device the valve can be aided in being drawn to its seat by turning the screw in the opposite direction from that required to throw the valve from its seat, while the complainant's patent has a loose joint, *i. e.*, a joint in which the parts act upon each other by a pushing motion, and not by pulling, between the swivel and the valve.

2. EVIDENCE.

The proof must be clear to show that an old patent upon an article used in every-day life, and which has long been in demand by the public, was anticipated by an article made in the city of New York 23 years before the knowledge of such anticipation was ascertained.

*Thos. William Clarke*, for plaintiff.

*M. B. Philipp* and *Charles R. Ingersoll*, for defendant.

SHIPMAN, D. J. This is a bill in equity to restrain the defendant from the alleged infringement of two letters patent—one granted June 27, 1865, to Nathaniel Jenkins; and the other, reissue No. 7,571, granted March 27, 1877, to Francis Roach, assignor to the plaintiffs. The original was dated September 8, 1868. Each patent is owned by the plaintiffs, and is for an improved self-closing faucet.

The validity of the Jenkins patent was sustained by Judge Shepley, in the district of Massachusetts, in the suit of the plaintiffs against D'Este, McKenzie & Bate. The plaintiffs then brought a bill in equity in this district against the present defendants, alleging the use of the same device which had been held by Judge Shepley to be an infringement. The defendant was a licensee of D'Este & Co. Infringement was here admitted, and the validity of the patent was again sustained.

The Jenkins invention was described in the opinion, in the last-mentioned case, as follows:

"The invention consisted in opening a self-closing faucet by means of a quick-threaded screw follower, the threads of which are inclined at so great a pitch that when the power to turn the screw is removed, the pressure of the water, and of a spiral spring under the valve, forces the valve to its seat, where it is held by the pressure of the water. The specification says that another part of the invention consisted in combining with the valve and screw-follower a swivel, so that the rotatory movement of the spindle shall not be

imparted to the valve, which shall have only an axial movement, and thus twisting or friction of the valve shall be prevented. This swivel connection of spindle and valve is frequently used in structures where rotation of the valve is not desired. The faucet has gone into extensive use."

The claims of the patent are:

"(1) The screw-follower, H, in combination with the valve of a self-closing faucet, substantially as set forth, and for the purpose described; (2) the combination of the swivel, P, screw-follower, H, valve, K, and spring, O, substantially as and for the purpose described."

The defendants now manufacture and sell a faucet like the one the use of which was enjoined, except that the former swivel is pinned to the screw-follower, so as no longer to be a swivel, but to be an extension of the screw-follower.

Had it not been for the history of the litigation, the defence of non-infringement would have been strongly pressed; but after the decision of Judge Shepley, and the admission of the defendant in the former suit in this district, it is useless to consider that question, except with reference to the point whether the swivel is included in the first claim of the patent. It is obvious that it is not claimed in terms in the first claim, and that in the specification the two branches of the invention are distinctly set forth.

The principle of the patentee's self-closing faucet was a combination of the several parts by which the valve was to be forced to its seat solely by the operation of the spring and the pressure of the water, and the valve was to be removed from its seat solely by the twisting of the handle of the screw-following apparatus. The screw was to do nothing in forcing the valve to its seat. The spring was to do nothing in removing the valve from its seat. The inclines of the screw were so quick that the spring could immediately force the valve to its seat whenever the person who was using the faucet released his hold upon the handle of the screw-follower. The connection between the screw and the valve must be by contact only, so that when the valve was returned to its seat the spring should do the entire work, and when the valve was forced away from its seat it should be affected by pushing the valve. There could be no rigid connection between the valve and the screw-follower or the swivel.

The operation of the defendant's faucet is thus correctly described by the plaintiff's expert:

"I find the valve having a movement at right angles to the plane of the valve seat, which movement is controlled in the direction necessary for the closing motion to act by means of a spring, and is controlled in the opposite direction by means of a cross-head or handles attached directly or indirectly

to the valve stem, and a quick screw thread or spiral incline. Torsional movement of the cross-head serves to cause the valve stem to traverse in the direction necessary for opening the valve, but the said torsional movement of the cross-head has no effect whatever in forcing the valve onto its seat, as the spiral inclines, that in case of torsional movement at the handle cause the valve to move away from its seat, have no corresponding inclines to force the valve onto its seat. In other words, there is a loose joint or connection between the handle and the valve mechanism that allows the force imparted by the operator to act in one direction,—that is, in the direction necessary to open the valve,—and not to allow of any positive force being communicated from the handle to force the valve onto its seat. This loose joint in Exhibit E consists in the lifting collar or sleeve having the friction rollers and the spiral inclines on the top of the faucet."

"By loose joint" the expert means a joint in which the parts act upon each other by a pushing motion and not by pulling. The loose joint in the Jenkins patent is between the swivel and the valve. It is, therefore, immaterial whether there is a swivel or whether the part formerly acting as a swivel is pinned to the screw-follower. This explanation of the Jenkins patent prevents the French patent of 1861, to Samy and Lenormand, from being an anticipation. The valve of this device can be aided in being drawn to its seat by turning the screw in the opposite direction from that required to throw the valve from its seat. The Chretien Moraud French patent, the only other anticipatory patent apparently relied upon by the defendant, was sufficiently considered in the former case.

The strength of the defence was in the alleged fact that self-closing faucets, constructed substantially like the defendants' device, were made and sold in the city of New York between 1852 and 1856 by F. H. Bartholomew, a well-known manufacturer of hydrants and plumbers' articles, who was also an inventor and patentee of hydrants, valves, and water-closets. Mr. Bartholomew is now dead, and no specimen of his faucet is produced. His former foreman, who is also now a manufacturer of plumbers' materials, has presented a faucet which he considers to be a reproduction of those made by Bartholomew, and which is substantially the defendants' article. If it is a reproduction the Jenkins patent was anticipated between 1852 and 1856.

There is produced on the one hand the testimony of the foreman and of divers workmen, who testify, in substance, that faucets like the sample were made and sold by Bartholomew, and that one was in use in his shop. Other workmen of his who were employed at the same time do not remember such an article. There is also the negative testimony of plumbers, who did business with him, that they never

saw such an article in his stock, and that if such a faucet had been made it would have been in demand. No sales of such a faucet can be recognized upon Bartholomew's book.

The Jenkins patent has been in existence since 1865. The faucet has gone into extensive use, especially in places where an article was required which could endure constant hard wear. Clear proof is required that an old patent upon an article used in every-day life, and which has long been in demand by the public, was anticipated by an article made in the city of New York before 1856; the knowledge of such anticipation having been ascertained about 1879. If the patent had been anticipated by the Bartholomew faucet, it seems palpable that the manufacturers of such articles would have taken advantage of the fact.

The evidence shows that Bartholomew had the idea of a faucet, the valve being drawn from its seat by a key which rode up the inclines of a V shaped cap; that he made such faucets, and sold a few; that they were not a success, and he did not continue the manufacture. He made, as testified by Waldron, three kinds. A duplicate of one of these kinds is in the case. The inclined surfaces of this kind are almost flat on top, and it is not necessarily a self-closing faucet. The point in this part of the case is whether he made the faucet, with a cap having the sharp and deep V, which is shown by Gen. Morrison, and which is also testified to by Waldron and others. It is somewhat significant that the old cap from which the Morrison cast-. ing was made is not in evidence. That cap was an important part of the Bartholomew faucet, and Gen. Morrison admits that "the V in the new cap is deeper than in the old cap." The testimony of all these witnesses is merely from recollection of the shape of a few articles made from 23 to 25 years before they testified, and is not sufficient to destroy the presumptions of a patent upon an article which has been long and extensively used. It may be that the present recollection of these witnesses in regard to a comparatively insignificant part of their work between 1853 and 1856 is accurate; but, in the absence of specimens of the work made at the time, such testimony is an unsafe foundation upon which to rest a finding that the patent had been anticpated.

The Bartholomew self-closing hydrant is also relied upon by the defendant. Bartholomew was largely engaged, between 1846 and 1856, in the sale of hydrants which were made under his patent of August 12, 1846. This patent represents the valve as opened by a lever. "Or, instead of this," the specification says, "the valve-stem

may extend through the top of the cap, there to be operated in any desired manner." Gen. Morrison and other witnesses say that Bartholomew made some hydrants before 1856, which went into use in the city of New York, the valves of which were lifted by a handle at the top of the hydrant. The witness says:

"On turning the handle, its incline, coming in contact with the incline on the cap, raised the valve-rod or spindle against the pressure of the spring, at the same time raising the valve from its seat and thus allowing the water to pass. By letting go the handle, the spring returned the valve automatically to its seat, thus making the valve self-closing."

After 1856 none were sold except two which lay in the shop until 1877, and these were sold to Mr. Soffe as exhibits in a suit upon the Jenkins patent. One of these did not have a pitch which would cause the handle to drop when left at any point. The other, which is the exhibit in this case, has a quicker pitch, and, if it ever had been used, might have been treated as an anticipation of the patent. Whether those which were sold for use were like the other Soffe exhibit, or like this, is not made clear. This method of opening the valve was not, apparently, regarded by Bartholomew as important. He laid no stress upon it in his advertisements. He treated it as unimportant in his patent. He made a few, but probably the use of the lever was preferred, and he made no more.

Judge Shepley found that the defendants in the Massachusetts case did not infringe the Roach patent. Since his decision the patent has been reissued, and it is now insisted that there is an infringment of the second and fourth claims. I do not perceive any modification of the original patent which is sufficient to cause a modification of Judge Shepley's opinion. The rotating key of Roach is not used by the defendants.

Let there be a decree for an injunction, and for an accounting as to an infringement of the first claim of the Jenkins patent, and dismissing so much of the bill as relates to an infringement of the Roach reissued patent.