PARSONS *v.* COLGATE and others

*(Circuit Court, S. D. New York. December 27, 1882.)*

1. FIELD OF INVENTION—RESTRICTION—DESCRIPTION, HOW CONSTRUED.

If the field of invention be bounded by prior patents, though referring to the objects of the patent in issue only by general terms known in the art to which they belong to include them, the description of what the inventor undertook to cover must be construed in the light of their existence.

2. SAME—FOREIGN PATENTS NOT WITHIN TERMS OF ACT OF 1836, §§ 7, 15, NOT CONSIDERED.

Foreign patents urged as anticipations of domestic patents, where the article is not properly proved to have been known or used in this country, or the patentee's circular to the trade was not a printed publication, or his provisional specification did not make the invention described in it patented, within the meaning of sections 7 and 15 of the act of 1836, will not be considered.

3. RESIDUUM—NATURE—INFRINGEMENT.

A residuum is what is left after a process of separation. There are as many different residuums of a substance as there are distinct products which may be taken away from it. Showing that both residuums come from the same source, that all in the residuum of the earlier of two patents is also in and is obtained by separation from that of the patent of later date, does not make out an infringement on the former. It does not show that they are the same; otherwise a prior patent for the same use, of the common source, would cover both. The proper effect is to limit the application of "residuum."

4. SAME—UNCHARRED RESIDUUM OF PETROLEUM—USE IN SOAP—PATENT No. 237,484—ANTICIPATION—VALIDITY.

Letters patent No. 237,484, for use in manufacture of soap of vaseline, produced by simmering petroleum down in open kettles, and afterwards filtering through bone-black, does not infringe letters patent No. 56,259, employing for the same purpose another uncooked residuum of petroleum so obtained by vacuum and steam process; for, while the charred and uncharred particles are always mechanically mixed, and the filtering out may be without chemical reaction, vaseline does not contain all the latter residue does; nor is it anticipated by other patents using residuums of petroleum in soaps; they confine it, however, to that particular residuum.

*Edmund Wetmore,* for plaintiff.

*F. R. Coudert,* for defendants.

WHEELER, J. This suit is brought upon letters patent No. 56,-259, dated July 10, 1866, and granted to the plaintiff for an improved soap.

*The defense is a want of novelty, and of infringement.* The specification of the patent sets forth:

"My invention is based on my discovery that when petroleum is so treated in a still or retort that the volatile parts are passed off without having the residuum coked or charred, the same residuum may be introduced in considerable quantities, by proper management, into the manufacture of soap, to the palpable benefit of its quality, reference being had to its cost, thus utilizing an article which has hitherto had little commercial value. This uncharred residuum may be produced by varied management of the still or retort. I have produced it by employing a vacuum in connection with a fire-heated still; also by injecting into the still and into the body of the petroleum free superheated steam, never having employed it at a temperature higher than would suffice to melt lead, and producing good results at a lower temperature. My invention consists in a soap made by combining the described petroleum residuum with alkalies and with animal oils or fats, or with vegetable oils or resin, or with any compound of or with these or any of them."

And then describes a method of manufacture of "ordinary yellow bar soap," and "ordinary soft soap," and proceeds:

"The petroleum residuum may be introduced to a greater or less extent into the manufacture of soaps of all varieties, to their improvement, if not used in too great proportion to other ingredients, the residuum having peculiar detergent properties."

The claim is for: "As a new manufacture, soap in which the described petroleum residuum is one of the ingredients."

The soap complained of as being an infringement is made by the use of vaseline, which is produced by simmering petroleum residuum in open kettles, and afterwards filtering it through bone-black, according to the specification of letters patent No. 237,484, granted to Robert A. Chesebrough. The principal anticipations relied upon are a soap made by one Hendrie, in London, and described in a circular, issued and published by him to the trade, long prior to the orator's invention; a provisional English specification of William Lloyd Caldecott, dated August 1, 1845; English letters patent to Maria Bounsall Rowland, dated May 19 and sealed November 10, 1857; to John Henry Johnson, dated October 30, 1863, and sealed April 26, 1864; and to Moreau and Ragon, dated August 6, 1862, and sealed February 9, 1863.

Hendrie's soap is not proved by the requisite measure of proof in such cases to have been known or used in this country, nor is his circular to the trade considered a printed publication or a public work within the meaning of the patent law. Act of 1836, §§ 7, 15. And Caldecott's provisional specification did not make the invention described in it patented within such meaning. Act of 1836, § 7. Therefore, these things are laid out of consideration. The field of invention, open to the plaintiff at the time of his invention, was bounded by these three English patents. What ground they covered he could not occupy, and the description of what he undertook to cover, is to be read and construed in the light of their existence.

The patent of Rowland covered adding:

"To a solution of soap dissolved in hot water," "ammonia, or certain of its components, and also some liquid hydrocarbon, or equivalent substance, such as turpentine, mineral or coal tar, naphtha, camphene, benzole, or other analogous substances obtained by the distillation of bituminous or resinous substances."

That of Johnson:

"The adjunction of mineral oils, such as oils of petroleum, naphtha, rock, or schist oil, to the fat or drying vegetable or animal oils, fats, or greases hitherto made use of in the manufacture of soap."

That of Moreau and Ragon what is shown by these parts of their specification:

"The liquid substances or hydrocarbons to be operated upon are first deoderized by the action of hydrochloric acid gas, which is made to pass through it, after which the liquid is conducted to the distilling vessel, where it is submitted to heat, which will cause the volatile matters to distill and pass over to a globular or other vessel."

"The light oils will, by their specific gravity, float on the top, and form an upper stratum which may be drawn off and used for lighting purposes, or for any other purpose for which they may be applicable. The heavier oils, after being separated from the hydrochloric acid gas solution, may then be subsequently treated and rendered capable of saponification." "It has been heretofore found extremely difficult, if not impossible, to saponify mineral oils. This difficulty, we consider, has arisen from the fact that in all such attempts endeavors have been made to cause the alkali to act directly upon and combine with the oil. We have discovered that although it is impracticable to cause the oil and alkali to combine when alone, yet that if saponification can be set up with other substances when the oil is present, the latter will be induced to saponify also."

Neither the patent of Rowland nor that of Moreau and Ragon mentions petroleum by name as anything, a product from which is to be used for soap, but that of Johnson does; and as petroleum is a min-

eral oil, and is essentially a hydrocarbon, or a mixture of hydrocarbons, and was at the time of all these patents well known in the art to which they belong, it is very evident that all of them refer to it and cover the products of it described in them. And in considering the bearing of these patents upon the one in suit it is necessary to keep in view that this patent is not for any particular combination of ingredients in soap, nor for any particular process of making soap containing the residuum described, but is merely a patent for what would otherwise be any common soap, of which that residuum is an ingredient. Also it is to be kept in mind that the residuum of the patent is not the only residuum of petroleum. A residuum is what there is left after a process of separation. From petroleum there may be separated by distillation cymogene, gasoline, the naphthas, benzine, kerosene, and other known products, and after each is taken there is a residuum left.

At the time of the plaintiff's invention, according to the evidence, what was known in the art and trade as a residuum appears to have been what there was left after taking off the comparatively valuable products; but these residuums were not all alike. In some cases the process was carried further than others. In some the residuums were treated so that they were substantially charred; in others, they were comparatively free from being charred. In these former patents petroleum products and petroleum residuums were to go as ingredients into soaps. They were not the same residuum as that of the plaintiff's patent; and those patents do not appear to anticipate his so as to defeat his for what he really invented that the patent assumes to cover. Had he been the first discoverer of the use of petroleum products in soap, he might, perhaps, by this patent, cover every form of such use of everything known as residuum not actually charred in this art; but as he was not, he is only entitled at the most to the particular form which he discovered the use of and patented. *Railway Co.* v. *Sayles*, 97 U. S. 554.

The defendants make use of a residuum, but they do not infringe unless they use the plaintiff's residuum. His and theirs all come from the same source, petroleum. According to the plaintiff's argument there is nothing in theirs not in his, and they obtain theirs only by processes of separation from his. This may be true, but if it is, theirs may not be the same as his. There is, according to this argument, nothing in either not in petroleum; and, if the argument should be carried out, a patent for petroleum in soap would cover both, and Johnson's patent would defeat the plaintiff's.

There were in the art, at the time of the plaintiff's invention, residuums from vacuum and steam processes which contained but very few charred particles; and residuums from distillation which contained but few uncharred particles, and from each of which most of what was then known to be valuable had been separated. The patent would, to those skilled in the art, probably be understood to refer to the former, and not to include the latter. When the former is used for the defendants' vaseline, it is first made to be like unto the latter. As the patent is only for a soap of which the former is an ingredient, and not for the latter, nor for converting the former into the latter, it can hardly be said to be infringed by reducing the former to the latter and putting the latter into soap.

The charred particles of a residuum are only mixed, and not chemically combined with the uncharred, however great the preponderance of either in the mixture may be; and if the uncharred portion is merely separated and put into soap, it is quite clear, as has been argued, that a patent for a soap containing uncharred residuum would be infringed. If vaseline is merely the uncharred part of the plaintiff's residuum, or the uncharred part of a like residuum except in the proportion of charred particles, it might infringe the plaintiff's patent. But, on the proofs, vaseline does not appear to be merely such a residuum with the charred particles filtered out. No one testifies that it is.

Competent witnesses testify that it is merely filtered without chemical reaction, which may be true; but, if so, this does not show that only the charred portions are taken out. The question is as to the identity of the residuums in other respects than as to charred particles, which is the distinction that the patent makes. The heat and the bone-black filter appear to remove more than the charred particles. These substances are so complex that it cannot now be told exactly what is removed by these processes. Vaseline may contain nothing that the plaintiff's uncharred residuum does not contain; but, whether it does or not, it does not contain all the things which that does contain. Very learned and competent men differ as to what the difference is, but that there is a difference clearly and fairly appears.

Vaseline is a residuum and an uncharred residuum, but is not the residuum of the plaintiff's patent. The patent cannot be upheld without limiting it to that particular residuum, and cannot be infringed but by the employment of that same residuum.

Let there be a decree that the defendants do not infringe, and that the bill be dismissed with costs