### BRITTON et al. v. WHITE MANUF'G CO.

### (Circuit Court, D. Connecticut. April 16, 1894.)

### No. 709.

1. **PATENTS—LIMITATION OF CLAIMS.**
   Statements of counsel to the patent office of mere reasons why it is desirable to have claims allowed in a particular form do not estop the patentee from claiming what is clearly granted by the patent.

2. **SAME—DESIGNS—FORM OF CLAIMS.**
   In a patent for a design for coach lamps, consisting of a tulip conventionalized in form, it is proper to allow separate claims for the upper and lower parts, and a third claim for the entire design.

3. **SAME—ANTICIPATION AND PRIOR ART—EVIDENCE—"PUBLICATIONS."**
   A drawing exhibited in a mere trade circular, unaccompanied by any evidence that it was ever actually published, or intended for general use, or accessible to the public, is not admissible as a printed publication for the purpose of showing anticipation.

4. **SAME.**
   A pamphlet purporting to be a number of a coachmaker's magazine, printed for general circulation, bound up with other numbers for the same year, and containing references to advertisements, with terms therefor, is prima facie a publication, within the meaning of the patent law.

5. **SAME—EXHIBIT OF DRAWINGS—ABSENCE OF DESCRIPTION.**
   Drawings exhibited for the purpose of showing anticipation of a design patent are not rendered irrelevant by the fact that they are unaccom-

panied by a written description. This objection merely affects their weight as evidence, and not their admissibility.

6. SAME—INVENTION.

The fact that a coach lamp made to resemble a tulip, conventionalized in form, shows outlines resembling a calyx, while in nature the tulip has no calyx, is strong evidence of original combination or creative thought.

7. SAME—DESIGN PATENTS—INFRINGEMENT—EXPERT EVIDENCE.

Little weight should be attached to the evidence of experienced designers on the question of infringement, since they are liable to be biased by the trained observation of the specialist. But the court should endeavor to place itself in the position of the ordinary purchaser, giving such attention as he would usually give.

8. SAME—VALIDITY—INFRINGEMENT.

The Britton design patent, No. 20,670, for a carriage lamp in the form of a conventionalized tulip, held to show patentable novelty, and to have been infringed by defendants.

This was a suit by Channing M. Britton and others against the White Manufacturing Company to restrain infringement of a patent.

Witter & Kenyon, for complainants.
F. W. Smith, Jr., for defendant.

TOWNSEND, District Judge. The bill in equity herein is brought for the infringement of design letters patent No. 20,670, granted April 14, 1891, to the complainants, for a design for a carriage lamp. The defenses are want of novelty, lack of patentable invention, and denial of infringement. The specification states that the invention relates to a design to be imparted to lamps, and consists of a novel shape and configuration. The complete lamp represents a tulip; the sides of the body part being so shaped as to represent the petals, the lower portion the calyx, and the downwardly extending portion the stem, of the flower. The cover of the lamp, by upwardly and outwardly extending projections, surmounted by a central spherical form, represents the pistil of the flower, or, taken alone, represents the tulip after its leaves have fallen; the projections resembling the calyx, and the spherical form the pistil. The claims of the patent are as follows:

(1) The design for lamps, consising of the body part, A, substantially as shown. (2) The design for lamps, consisting of the upper part or cover, D, substantially as shown. (3) The design for lamps, consisting of the body part, A, and the upper part or cover, D, substantially as shown.

Complainants' lamp fitly embodies the design of a tulip. It consists of two parts, which represent a graceful, harmonious whole. That it found great favor in the eyes of the public, and had a large sale, is abundantly proved. The question is, has it the degree of novelty required to protect a patent for a design?

The file wrapper shows that the patent office rejected four of the original five claims, on the ground that an inventor could only have a claim for a unitary design, and subordinate claims for segregable and distinctive features; and that counsel for complainants amended the claims, and requested their allowance in the present shape, on the ground that the public would be readily deceived, either by a design consisting of the exact cover and a body slightly resembling the body of the patented design, or by an exact copy of

said body combined with a different cover. Defendant claims that these statements limit the second claim of the patent to a construction containing both features exactly, or the exact body and any style of cover, or the exact cover and a somewhat similar body. The patent office has allowed the separate claims. It does not seem that a mere statement by counsel of a reason why it was desirable to include them in a single patent should estop the patentee to claim what was clearly granted him under said patent. Separate claims for the entire design and for its separate parts were properly allowed. Dobson v. Carpet Co., 114 U. S. 439, 446, 5 Sup. Ct. 945.

Defendant further claims that, admitting the novelty of the complete design, the state of the art shown by certain exhibits limits the construction of the patent to a claim for the design as an entirety. Defendant's exhibit, "L'Ecluse Lamp," shows a glass body of the exact shape covered by the first claim of the patent in suit, but without the metal calyxes at the base, and with downwardly extending ornaments not found in the patented design. This drawing is not accompanied by any printed description, but is contained in a pamphlet, which appears to be a mere trade circular of "Ch. De L'Ecluse, Paris," and which had been in the possession of one of defendant's witnesses since November, 1888. There is no evidence that it was ever actually published, or intended for general use, or accessible to the public. Complainants objected to its introduction, on the ground that it was not such a printed publication as would anticipate a patent. The objection is well taken. Rob. Pat. §§ 325, 326; Reeves v. Bridge Co., 5 Fish. Pat. Cas. 467, 468; Fermentation Co. v. Koch, 21 Fed. 587; Parsons v. Colgate, 15 Fed. 600; In re Atterbury, 9 O. G. 640.

Defendant's exhibit, "Saladee Lamp," is a rough wood cut of a carriage lamp, having the outlines of, and bearing a general resemblance to, a tulip, and having curved engraved lines at its base, printed in a bound volume entitled "The Coachmaker's Monthly Magazine. C. W. Saladee, Proprietor. New York, April, 1855," which had been in the possession of one of defendant's witnesses since 1873. The complainants objected to this exhibit also, on the ground that it was not a printed publication; and, furthermore, because it was not set up in the answer. I think the Saladee Coachmaker's Monthly Magazine is admissible as a printed publication, to show the state of the art. The number containing this lamp in question has printed on it, "New York, April, 1855," is bound up with other numbers for the years 1855 and 1856, and refers to its advertisements, and gives terms therefor. It purports to be printed for general circulation, and is characterized as a publication by the witnesses for defendant. These circumstances furnish sufficient prima facie evidence of publication. Rob. Pat. § 328; Reeves v. Bridge Co., supra; In re Atterbury, supra. While, therefore, the defendant could not derive any advantage from this evidence in support of a claim of lack of patentable novelty, the court may, in the light of said evidence, determine what, in the state of the art, was open to the patentee, and what his patent must, therefore, be construed to claim. Rob. Pat. § 1006; Grier v. Wilt, 120 U. S. 412,

429, 7 Sup. Ct. 718; Seymour v. Osborne, 11 Wall. 539; Railroad v. Dubois, 12 Wall. 47, 65; Eachus v. Broomall, 115 U. S. 429, 434, 6 Sup. Ct. 229.

Defendant's "Exhibit Beitschrift" shows a top whose general outlines suggest the top of the patent in suit. It does not embody either calyx or pistil, and is only material, if at all, upon the question of the novelty of the second claim.

It is unnecessary to consider the other exhibits introduced by defendant, except to say that those not excluded under the objections already considered show that upwardly extending covers of carriage lamps, and bodies resembling in outline the general shape of complainants' body, but not embodying the specific design, were known to the art prior to said patent. The indefinite, unsubstantiated evidence of prior use is insufficient to affect the validity of the patent. Zane v. Peck, 9 Fed. 101; Lalance & G. Manuf'g Co. v. Habermann Manuf'g Co., 53 Fed. 375.

The objection to certain of defendant's exhibits that they are merely drawings, unaccompanied by a written description, and therefore not relevant upon the question of anticipation, is not well taken. The objection affects the weight of the evidence, not its admissibility. The decisions referred to by complainants were not rendered in cases of patents for designs. In the latter cases, the effect upon the eye being the chief thing to be considered, there is no reason why a mere drawing, in a proper case, should not be sufficient. Ex parte Crouch, 57 O. G. 845; Dobson v. Dornan, 118 U. S. 10, 6 Sup. Ct. 946. In the case of Untermeyer v. Freund (decided by the circuit court of appeals for the second circuit, October 17, 1893) 7 C. C. A. 183, 58 Fed. 205, the drawings considered by the court in determining the question of patentable invention were not accompanied by any description.

The idea of a flower, conventionalized so as to be symbolized in a lamp, was new, so far as appears from the state of the art shown to the court. Other designs were shown which were graceful, approaching in certain respects some single part of complainants' design, and some resembling the general outlines of complainants' lamp, but none which embodied the complete design covered by the patent. And, admitting over every objection, all designs, enlarged, improved, modified, and with one part of one lamp combined with a different part of another, there is nowhere to be found, in letterpress or cut, a suggestion of a flower, or of such a tulip design, as a harmonious whole. The wood cut of the Saladee lamp is unaccompanied by letterpress description, and and is so roughly and incompletely drawn as to leave it uncertain whether it was intended to imitate a tulip or to merely select a graceful design, such as is shown in the lamp in defendant's Art Journal Illustrated Catalogue.

A further consideration in support of the novelty and originality of this design has forcibly impressed my mind. The court, taking judicial notice of matters of common observation and knowledge, finds that a tulip has no calyx. The outlines at the base of top and body of the patented design are not found in nature, but seem to have been the fanciful creation of the patentee. This circumstance

seems to me to furnish strong intrinsic evidence in favor of his claim of an original combination or contribution of creative thought. It has been well said that in designs "it is the new and original appearance which constitutes mainly the contribution to the public which the law deems worthy of recompense." We are educated, in these later days, to admire, not the mere forms of the carpenter or molder, but the conventionalized forms which suggest the natural objects which they represent. Gorham v. White, 14 Wall. 511. The statement of Judge Robinson in his work on Patents (section 206) seems peculiarly appropriate to this case. He says: "The essence of a design resides in the idea of that configuration or ornamentation which constitutes the new appearance given."

The conclusion reached from these considerations is that the patented design is a meritorious one; that it is not limited by the prior state of the art, as shown; and that the claims for the separate top and body, as well as for the entire design, are valid, and should be sustained.

The defendant has manufactured two differently constructed lamps, which complainants claim infringe said patent. It does not seem necessary to discuss the claim that the top of the second lamp of defendant infringes the second claim of complainants' patent. The claim covers a central spherical form, surrounded by upwardly projecting curved representations of a calyx. Defendant's lamp has a flat cap, surrounded by a downwardly projecting circular rim, which separates it from upwardly projecting semi-circular grooves. There is no resemblance between the two, and no one would be likely to be deceived. The correspondence between the parties prior to the suit shows that complainants claimed that the top of both lamps manufactured by defendant infringed the patent in suit, and that the defendant admitted that the head or top of the first lamp "did conflict with their patent," and ceased from making them. It denied infringement as to the second lamp, but dropped it from its price list. Complainants insisted upon payment of the statutory penalty of $250, and defendant declined to pay it, whereupon this suit was brought. Defendant's secretary, Wilmot, in his testimony, qualified said admission by saying that he should have said that said top "seemed to conflict" with the patent in suit. I do not consider either admission as material, because, under the test applied to design patents, that which seems to conflict would ordinarily be an infringement; and, further, because a comparison of the two heads shows that the top of the defendant's first lamp seems to be a copy of the top part of complainants' lamp.

The vital question in the case is whether the defendant, by the manufacture of its first lamp, has infringed the patent in suit. Three witnesses for defendant—Boudren, Galle, and Fest—testify on this point. Boudren says, "There is so little similarity that nobody not an idiot could make a mistake." Galle says the designs do not resemble each other. Fest says, "I should think, in my experience, a purchaser could easily tell the difference." But Boudren is a lamp designer, a large stockholder in, and the superintendent of,

the defendant corporation. The other two witnesses are carriage or lamp designers, one of them being in the employ of a rival manufacturer. It does not appear that either of them ever sold a carriage or lamp to any one. It does not appear that Boudren ever had any experience to qualify him to testify on this point, other than from making sales of lamps on behalf of defendant corporation to trade buyers. Apart from other objections, this kind of evidence seems to be peculiarly within the class of expert testimony which has not found favor with the courts on the question of infringement of designs. It is not based upon experience in dealings with the ordinary purchaser, giving only such attention as such persons ordinarily give. It is based upon a theory emphasized, and liable to be biased, by the trained observation of the specialist. Gorham v. White, 14 Wall. 528. Inasmuch as the test of sameness is determined by the eye of the ordinary observer, I do not regard such testimony, from such expert designers, as of much importance. Six witnesses for complainants testify that the ordinary purchaser would be misled by said lamp, and would purchase it as one embodying complainants' design. Four of these witnesses were apparently disinterested persons, and neither they nor the two other interested witnesses were expert designers. They were experts only in the sense that they were constantly engaged in selling carriages to the ordinary public, whose testimony, founded upon their judgment and experience in such matters, might be of great assistance.

Apart from the effect of said testimony, the first impression received upon examination and comparison of the exhibits by the side of each other, was favorable to the defendant's claim that the ordinary purchaser would not be deceived. The complainants' exhibit, in all its details of construction, is more artistically constructed and finished. The defendant's exhibit has certain features —notably the extra downwardly projecting top, and the circular ornaments at the bottom—not found in complainants' exhibit. The plain, spherical top of complainants' exhibit is flattened and ornamented in defendant's exhibit. The calyxes of the top are relatively larger in complainants' than in defendant's lamp. The plated divisions between the glass sections of complainants' lamp are more conspicuous than in defendant's lamp. Complainants' lamp has metal calyxes covering the bottom of the glass sides. Defendant's lamp has curved glass bottoms, filled out by the metal base. The bodies are dissimilar in shape. But the construction set forth in the specification and covered by the claims is not confined by such details of size, proportion, and ornament. It "consists of the novel shape and configuration." The test of infringement is whether ordinary purchasers would be likely to mistake the one design for the other, giving such attention as such a purchaser usually gives. Gorham v. White, supra; Monroe v. Anderson, 7 C. C. A. 272, 58 Fed. 398. I have already critically discussed the expert evidence, because it seems to me that the decision of the case may depend upon the definition of the "ordinary purchaser." If thereby is meant the trade purchaser of lamps, the claim is not infringed. He would not be deceived. I have treated this term as applicable to the gen-

eral purchasing public, who buy a carriage with lamps under the ordinary conditions under which such purchases are ordinarily made. In applying this test, the court should endeavor to place itself in the position of such purchaser, and to consider the accompanying conditions. The ordinary purchaser, in such a case, is not the dealer, who is presumably informed as to the various designs and their resemblances and differences. The ordinary purchaser sees the patented tulip lamp upon a carriage in the street, or among complainants' stock of carriages. He examines other carriages in other warehouses and elsewhere, and sees defendant's lamp mounted above his head on the carriage. It has the pistil, the upper calyxes, the curved lines, corresponding to the lower calyxes, and an outwardly extending body. Every element is imitated, except the double curves of the glass. His eyes and attention, distracted by divers other considerations, are not critically directed to details of construction.

The manifest infringement of the upper part, substantially admitted by defendant; the only difference of construction therein—the flattened sphere—being one which would not be noticed from the point of view of the ordinary observer; the allegation that the infringing design was copied from that of complainants, undenied; the appropriation of the name "Tulip" by defendant for its second lamp; the apparent imitation of certain important details; the introduction of unessential variations; the adoption of curved lines simulating calyxes and petals,—these, together with the other circumstances, and the testimony already considered, indicate that the defendant intended so to imitate the patented design as to lead the ordinary purchaser to believe that he was getting complainants' lamp, and that the suggested differences are colorable, and not substantial.

The peculiar merit of the novel idea of thus symbolizing a flower, and its admitted popularity and utility, seem to entitle this design to a more liberal construction than would be applied where old and familiar devices for configuration and ornamentation are merely rearranged in new relations. This view is enforced by the above considerations as to the infringing design. The first claim, for the body part alone, is not infringed. The second claim, for the cover alone, is infringed by defendant's first lamp. If it were necessary to decide the point, I am inclined to adopt the views of the witnesses for complainants, and to hold that there is sufficient similarity between the body of defendant's first lamp and the body of the patented design, so that, when used in connection with the infringing cover, the third claim is infringed; although said body, without said cover, would not infringe. In view of the conclusions reached, an injunction against the infringement of the second claim will sufficiently protect the complainants in this case.

Let a decree be entered accordingly.