## JOCKMUS v. LEVITON et al.

Circuit Court of Appeals, Second Circuit.
October 29, 1928.

No. 157.

Gifford & Scull, of New York City (George F. Scull, of New York City, of counsel), for appellants.

Howson & Howson, of New York City (Hubert Howson and Wm. S. Pritchard, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ██ We are content to follow the ruling in Imperial Glass Co. v. Heisey, 294 F. 267 (C. C. A. 6), that a catalogue distributed generally to a trade is a publication within Revised Statutes § 4886, 35 USCA § 31. It may indeed be that such a document was not a "public work" under the act of 1836 (5 Stat. 117), and that Parsons v. Colgate (C. C.) 15 F. 600, was rightly decided, though the brief comment in the opinion does not take the distinction. Reeves v. Keystone Bridge Co., 20 Fed. Cas. 466, No. 11,660, only threw out a doubt, and went off on another point. While it was laid down without discussion in New Process Fermentation Co. v. Koch (C. C.) 21 F. 580, 587, that circulars were not publications, it was unnecessary to the decision and certainly was not its chief reliance. Britton v. White Mfg. Co. (C. C.) 61 F. 93, was decided without discussion, and on the authority of the three cases, just cited, which support it only so far as we have said. The aggregate of these authorities is not so imposing as to cause us any hesitation in following the Sixth Circuit. On principle we are entirely in accord, for the purpose of the statute is apparent, and we ought to effect it so far as its language will allow. While it is true that the phrase, "printed publication," presupposes enough currency to make the work part of the possessions of the art, it demands no more. A single copy in a library, though more permanent, is far less fitted to inform the craft than a catalogue freely circulated, however ephemeral its existence; for the catalogue goes direct to those whose interests make them like-

ly to observe and remember whatever it may contain that is new and useful.

Whether the cut, No. 712, in Gogarten & Schmidt's 1908 catalogue, was a sufficient disclosure is another matter. If the claims be strictly limited, it certainly was not, because it did not show how the end of the upper leg was fastened to the stud—whether as the plaintiff does it, or as the defendant, or in some other way. But, if the claims be read as they must be to cover the supposed infringement, we do not see what can be thought missing. That it was an adjustable candle socket the text itself declares; how its adjustment was to be made the cut makes plain beyond chance of mistake. The socket at the top is plainly for a bulb and the screw thread at the bottom to fit upon the pipe terminal. The jacket was represented by figures 713 and 714, and the whole of this very simple invention was before the reader at a glance. We know of no rule that figures can never of themselves be an adequate anticipation of mechanical inventions, as of course they must be of designs, and we can see no reason for importing into the statute an arbitrary distinction, unrelated to its purposes, Keene v. New Idea Spreader Co., 231 F. 701, 708 (C. C. A. 6); Huebner v. Mathews, 253 F. 435, 444 (C. C. A. 6). Words have their equivocations quite as much as figures; the question always must be what the art necessarily gathered from what appeared.

Whether the catalogue was in fact distributed generally, and when, are different questions. That it was printed in 1908 no one can reasonably doubt; it was a trade catalogue, meant to pass current for a season and to be superseded, as its successor of 1910 in this very case bears witness. To suppose that it bore an earlier date than that at which it first appeared contradicts all we know about merchandising; it might be post-dated like a motor car, but never the opposite. It is of course conceivable that, though printed, it was never distributed, or that the distribution was too limited to be a "publication." As to the last we can scarcely undertake to set a limit. Schmidt says that perhaps 1,000 went out. Far less would have served; the 50 which was his lower limit were quite enough. To be sure the fact of any distribution at all rests upon the uncorroborated testimony of him and Scharpe, because there was further documentary corroboration of neither, though each was explicit in his recollection, and each had had first hand knowledge. This would not be enough, if the catalogue itself were not produced, bearing its own evidence of existence since 1908, but no one can seriously suppose that such a document, printed in quantity, was intended to be kept secret; its whole purpose was to be spread broadcast as far as possible. It had been printed at some expense in French for French customers, and, unless some accident happened to prevent, it would in due course have gone upon its intended errand. To prove that no accident did happen, and that it did reach its destination we have, it is true, only oral, though entirely disinterested, testimony; but it is a mistake to assume that, even under the extraordinarily severe tests applied to the proof of anticipation, every step must be buttressed by documents. That some documents are necessary, perhaps, may be the rule; but, when the documents go so far as here, the ritual, if there is any, is satisfied, and the question is merely whether any doubt remains. We think that to entertain a scruple in a case so fortified is to catch at straws.

This found, we need go no further. The claims must be limited to their language to escape defeat, even if they were not so limited by what took place in the Patent Office. That they are invalid we do not say; but they are very narrow, as narrow as the applicant chose to make them to avoid the Examiner's references, who happened to be building better than he knew.

Decree reversed, and bill dismissed, for noninfringement.