## CUTLER HAMMER MFG. CO. v. BEAVER MACHINE & TOOL CO., Inc.

## SAME v. DAVID KILLOCH CO.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

### Nos. 60, 61.

1. Patents ⬥328 — 1,162,864, for electric switch, held invalid, in view of prior art.

Patent No. 1,162,864, for electric switch, *held* invalid, in view of state of prior art.

2. Patents ⬥172—Patent cannot issue for invention covered by former patent.

No patent can rightfully issue for invention actually covered by former patent, especially to same patentee, though terms of claim may differ.

3. Patents ⬥20, 26(1)—Change of form or design is not "invention."

Putting an old form of electric switch into an old form of casing is not invention, nor will change of form or design, so as to make device smaller, different in shape, or more compact, amount to invention.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

4. Patents ⬥328 — 1,353,124, for electric switch, held invalid, in view of prior art.

Patent No. 1,353,124, for electric switch, *held* invalid, in view of state of prior art.

Appeals from the District Court of the United States for the Eastern District of New York.

Patent infringement suits by the Cutler Hammer Manufacturing Company against the Beaver Machine & Tool Company, Inc., and against the David Killoch Company. From the decree rendered, all parties appeal. Reversed in part, and in part affirmed.

Arthur B. Seibold and W. Clyde Jones, both of Chicago, Ill. (Everett N. Curtis and Frank W. Hubbard, both of New York City, of counsel), for plaintiff.

Samuel Owen Edmonds, of New York City, for defendants.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. The parties herein will be referred to as below. The defendants appeal from that part of the decree entered which holds valid and infringed the first patent, No. 1,162,864, and plaintiff appeals from that part of the decree which holds invalid patent No. 1,353,124.

The first patent was granted December 7, 1915, and the second September 14, 1920, and each is for an electric switch. The earlier patent, the inventor says, has among its objects to provide an improved switch of exceedingly simple, efficient, and inexpensive construction, and a further object is to provide improved means for supporting and inclosing the switch mechanism. He says:

"By my improved construction I have been able to provide a switch device which is of a compact and rugged construction, and in which the parts are so constructed and arranged as to permit a long use in service. Further, the switch casing is of a convenient form, and presents a symmetrical appearance, and may be readily connected and disconnected from the conductors when desired. * * * Further, the conductor which extends through the switch casing is securely clamped in the same, and the arrangement of the casing is such that the weight of the

switch mechanism does not rest upon the contact screws. Further, by the provision of the insulated washers in the ends of the casing, the conductors are held securely and snugly in place, and are prevented from rubbing and wearing their insulation."

Claims 2, 3, 4, 5, 7, and 8 of the first patent are relied upon, and are as follows:

"2. In an electric switch, a switch mechanism of the push button type, a two-part casing having tapering ends, terminal contacts for said switch mechanism carried in a recess in one of the parts of said casing having a body portion lying flat on the bottom of said recess on opposite sides of said switch mechanism and contact surfaces bent substantially at right angles to said body portions.

"3. In an electric switch, a snap switch mechanism of the push button type, a two-part casing inclosing the same having reduced tapered ends provided with the grooves, and a groove in one of the parts of said casing communicating with the grooves in the ends of the same, and terminal contacts for said switch mechanism carried by one of the parts of said casing and arranged on opposite sides of said switch mechanism.

"4. In an electric switch, a snap switch mechanism of the push button type, a casing inclosing the same having reduced tapered ends provided with grooves and a groove extending through said casing and communicating with the grooves in its ends, terminal contacts carried by one of the parts of said casing having bent contact surfaces located in a plane parallel with the plane of movement of said switch mechanism.

"5. In an electric switch, a snap switch mechanism of the push button type, casing inclosing the same terminal contacts for said switch mechanism insulated from each other and carried in recesses in said casing adjacent its ends, said terminal contacts having bent contact surfaces lying in a plane substantially parallel with the plane of movement of said switch mechanism."

"7. In an electric switch, a snap switch mechanism, a two-part casing inclosing the same and having conductor opening in its opposite ends, one of the parts of the casing carrying terminal members for the switch in the opposite ends of a recess in the same adjacent said openings while the other part of said casing is provided with means arranged to inclose the switch mechanism in a closed chamber, both of the parts of said casing being arranged to guide and limit the movement of the operating parts of said switch mechanism.

"8. In an electric switch, a snap switch mechanism of the push button type, a two-part casing having conductor openings in its opposite ends arranged to guide the operating parts of said switch mechanism and establish the limits of their movement and having suitable recesses arranged to inclose said switch mechanism in a closed chamber, terminal contacts carried by one of the parts of said casing on opposite sides of said switch mechanism adjacent said openings and means for holding the parts of the casing together."

The plaintiff claims this invention gave to the art for the first time a feed-through switch capable of being inserted in a flexible cord circuit, sandwich-wise, and medially of the ends of the cord and directly at the point of final location, wholly independently of the ends of the cord and without disturbing the plug at either end of the cord. This is said to be a new idea and that it produced a new result. The claim is further that switches of the prior art were invariably of what may be called the "thread-needle" type. It is said they could not be connected directly at the point of final location in the cord, but required that the plug at the end of the connecting cord be removed and the cord then threaded through parts of the device in order to bring the feed-through switch to the point of final location. The advantage of the plaintiff's new device is that it may be located directly at the desired point, without disturbing the plugs at the end of the cord, and without threading the cord through any of the parts of the device. The argument is that it "requires ingenuity of a high order to work out a provision for accomplishing a threefold result, first, of isolating the through conductor from the switch mechanism, so that the latter may be operated without interference by the through conductor; second, compensating for the slack in the through conductor; and, third, insuring that strains placed upon the connecting cord will be taken by the through conductor and not imposed on the cut conductor, with possible pulling loose thereof from the binding posts."

The purpose of the electric switch has always been to open and close (or make and break) the electric circuit. Thus current control, no matter what used for, has brought into being the socket switches, receptacle switches, candlelabra switches, canopy switches, feed-through switches, both for pipe lines and for flexible wire lines, and many others differently named, but essentially the same as far as concerns the circuit

making and breaking mechanism. They are usually mounted upon insulation designed and fashioned to adapt that mechanism to one or the other particular use required. The first switches were of the slow make and break type. They were objectionable on account of arc-ing. This type was superseded some years ago by the quick make and break type called the "snap" switch. This proved to be the favorite type for the past 20 years. The switch-operating means has taken a variety of forms; some have been operated by keys and by push buttons, sometimes one and sometimes two, the latter form being preferred whenever it was desirable that the switch itself should show, by the position of the buttons, whether the current was on or off.

The inventor of the patents in suit appears to have been also the inventor of two different switch units, one known as the "garter-spring" type and the other the "hill and valley" type. The first was patented on February 28, 1911, and the latter on May 23, 1916. He took each unit in its turn and employed it in the lamp socket device and also in the pendant switch. The plaintiff then claimed that this line of push button specialties, which were made possible by these earlier inventions of Klein, were a "snap" switch mechanism, which, by reducing the number of moving parts, permitted a thoroughly substantial quick make and break switch of ample current-carrying capacity to be installed in a pendant switch body or socket shell of small dimensions, and mentioned the various switches above referred to. Both of these units for which patents have been obtained, and which are not in issue here, made it possible for an experienced designer of particular forms of well-known devices in which switch units are required to design a line of such devices differing from each other almost wholly with respect to the fashioning of the insulation in which the metallic parts of the switch units were mounted. This was within the accepted skill of the calling. The inventor here had appropriate designs of sockets, pendants and feed-throughs, in which such a switch unit could practically be mounted.

In the first patent in suit, the garter spring switch shown in Klein's earlier patent, No. 985,421, is used. The insulating case is made of two halves adapted to be clamped together by screws. The terminal contacts of the switch, which are stationary, are permanently combined with one of these insulating halves by being fixed to the casing by suitable screws, which extend through to the other side of the base. The inner edges of the contact members are bent inward substantially at right angles, and with these bent portions the contactor coacts with the wiping action. The contact members are mounted in the recesses. By also recessing the adjacent faces of the insulating halves, a chamber for the switch mechanism is formed. Communicating with this chamber are holes for the push buttons of the switch. These holes guide the push buttons. The movement of the contactor is limited by the recess or cavity in which it works; the movement in one direction being limited as in the other direction by stops. This construction is disclosed in the claims in issue, and they indicate a difference in design from the pre-existent structures of Klein. The claims require that one of the parts or casing carry the switch mechanism; the specification and the drawing make this clear. The terminal contacts are carried by the casing and in the course of factory production are fixed to it by the screws as described in the specifications and shown in the drawings.

[1] We fail to see invention in this change of structure in view of the state of the prior art. The patent to Bergman, No. 385,539, granted July 3, 1888, disclosed a sandwich-type feed-through switch. It seems to be a progenitor of all the switches of that type now on the market. There has been departure in details from Bergman's precise design as respects the details of the switching mechanism, but the essentials of the sandwich-type switch are disclosed. He says they are "made in two parts joined along the vertical center and secured together by screws or similar means, giving the facility of quickly taking it apart for repairs or the insertion of the circuit wires." The through wire has its own individual groove or channel, one-half in each of the insulating parts. This is true of the switch wire. The switch is "pivoted in a slot formed in the block" and its end "is allowed to project through one edge of the block far enough for convenient operation, and is provided with an insulating knob for grasping with the hand as shown" in the drawing, and Bergman says "it is well fitted for use at any point at which a switch is desired to make and break an electric circuit." The criticisms of the Bergman patent, when considered as an anticipation of the patent in suit, are not well founded. The inventor here was preceded by Bergman in the "sandwich-type" switch and other patents in the prior art, as are shown, not only by the Bergman, but by the Starr and Batcheller, patents.

The prior art was not confined to switches of the so-called "thread-needle" type. The advantage of the "sandwich-type" switch is that it may be connected with the circuit without disturbing the plug at either end of the cord. The "thread-needle" switch requires that the plug at one end of the cord be disconnected and passed through the switch after which the plug must be reconnected to the cord. Switches of both types are to-day in active demand and use.

The history of the application in the Patent Office shows that, as finally allowed, claim 8 indicates a combination which admits to have been old—all the fundamental features and characteristics—and this apparently was forced upon the patentee by the disclosure of the prior art in the Patent Office. The longitudinally divided casing referred to in the claims refers to the sandwich form of insulating support. But this was in Bergman's and was utilized by Starr and Batcheller. In mounting the garter-spring switch, so as to be useful as a feed-through switch, the inventor took one of the well-known longitudinally insulted casings and suitably recessed it to receive the metallic parts. Since the garter-spring switch was of a peculiar design, the recesses made to receive it had to be correspondingly dimensioned. The prior art indicated all this. A central cavity for the conductor was shown by Starr and Bergman and Batcheller. Openings in the insulation in the hand operable part of the switch were equally shown and illustrations were shown in these prior patents. Independent grooves, one to receive the cut wire and the other the feed-through wire, were disclosed by Bergman and the equivalent practice was shown by Schulz. The common practice of having the feed-through wire running continuously through the switch, the other wire being cut, at its end, secured to suitable terminals coacting with the current making and breaking element of the switch were in the Bergman and Hubbell structures.

The idea of facilitating assembling and making the switch easy of access for repairs by detachably screwing the two halves of the casing together by means of screws, was characteristic of the prior device of Bergman. It is apparent that what the inventor did to transpose his pendant switch of 1908 into the feed-through switch disclosed by his application filed three years after the former was to make both ends of the pendant switch symmetrical running the conductors in one end and out the other instead of having them come in and leave by the same end. This involved no new means. Pendant feed-through switches have been known for years prior, and the difference between them resided wholly in the matter of ingress and egress of the wires. To change either form to the other form would not require more than a skilled mechanic's efforts. The essentials of the construction covered by the claims of this patent were known to the inventor as indicated by his prior inventions, for which he has obtained patents. Indeed, he readily relinquished claims to them while this invention was passing through the Patent Office. What is left over the prior art is the selection and adoption of features which might be considered a matter of design. We think there was no invention over what was disclosed in the prior art, and that the decree granted in favor of the plaintiff on this patent should be reversed.

The second patent, No. 1,353,124, has for its object to provide a switch of simple and compact construction and one of such external dimensions and shape as to be conveniently handled and to be attractive in appearance. More specifically it provided a switch wherein the switch parts and conductor passages are so arranged in insulating casing as to facilitate manufacture, assembly, inspection, and wiring. The second patent differs from the structure of the first patent in that, not only the binding posts, but also the push buttons for operating the switch mechanism are positioned in the plane of separation or cleavage of the two parts of the casing; the purpose of the new arrangement of the parts was to provide a more compact or smaller feed-through switch, and one which could be made at a relatively small price, and also one which could be effectively made of flat formation, so as to be capable of resting in a stable position on the support on which it happened to be placed, while at the same time having the switch-operating members readily accessible and conveniently operable. The advantages are said to be a more compact device, and also one which could be "made in waferlike or flattened form, so as to be capable of resting stably upon the support upon which it was placed, with the push buttons readily accessible for the operation of the device, but that end could not be attained by simply making the first device smaller. To accomplish this compactness reorganization was necessary. * * * Stability of the switch upon its support, cheapness of manufacture, lightness in weight, and compactness in size were the desiderata in attacking the problem of the invention of the second Klein patent."

All claims are sued upon. The patent is

a reducing of the first patent in suit. The inventor already had a switch unit, the hill and valley type. This has been utilized in a line of devices of the plaintiff's production. The feed-through switch of the first patent in suit, like the switches of Bergman, could be connected up without removing the plug or the appliance in order to pull the cord through it. The plaintiff then gave up the sandwich type and turned to the metal shell type (thread-needle switch), which are like other switches of that type in the prior art. The inconvenience involved is in connecting it up; that is, removing either the plug or the appliance; but this was overcome by the so-called "football" switch.. The inventor, on being instructed to return to the sandwich type, did not return to his first switch of the football type, for that had switch buttons at right angles to the joint. Then he adopted the longitudinally divided insulating case of the Bergman patent type, with the switch button in the joint. With the old Bergman casing and the hill and valley switch unit which the plaintiff had been using for years, the task of designing the new devices of the second patent was merely a matter of rearranging the grooves and recesses of the football switch, so as to adapt them to the hill and valley switch unit. It was the substitution of the Bergman casing for the first Klein casing, and the substitution of the hill and valley switch for the garter-spring switch. Both the first and second patents sued upon are essentially the same, except in these two particulars. There are in both (1) the use of the moldable insulation; (2) the tapered end form; (3) the end openings for the conductors; (4) the continuous feed through a groove; (5) the terminal contacts and binding screws on either side of the switch; (6) the abutments to resist the crushing strain of the screws; (7) the guiding of the switch buttons by holes in the insulating casing; (8) the attachment of the insulating halves by screws.

This presented no difficulty or inventive problem to one skilled in the art. Putting the old switch in the Bergman old casing in such manner that it would acceptably perform the work, and substituting his double button switch for the Bergman single button switch, and arranging the grooving and recessing of Bergman's insulating casing, thus suitably modifying it, so as to make a compact fitting switch, was not invention. At any rate, this problem seems to have been solved by Klein, the inventor, many years before the alleged conception of this second patent. The application for this second patent was filed November 24, 1916. His conception was in February, 1916. But prior to that date Klein had patented all the essentials of the switch now claimed to be covered by this patent in suit. The size and weight of the first patent seems to have been caused by the fact that the switch was put in at right angles to the joint between the casing halves. When the switch was placed in line with the joint, the switch button protruding through the joint itself, the difficulty was at once overcome. In this application, filed in 1911 and 1914, and on the patents, which were received in 1915, this new form was disclosed. Indeed, the Bergman patent in 1888 shows the switch mechanism arranged in line of the joint, the button protruding through the joint itself, precisely as disclosed in this second patent in suit. In the prior patent, Klein is shown to have designed a device which, while essentially the same as a feed-through switch, was specifically different with respect to the contacts. He designed a switch socket to be used at the end of a cord, rather than a feed-through switch to be used in the middle of the cord. This was a mere matter of employing one well-known form of contacts rather than the other.

[2] But, on referring to the prior patents, it will be seen that one of the terminal contacts runs from the switch and terminates in a round plate forming the bottom contact for a lamp. The other lamp contact is the well-known screw shell, which is also in the circuit being connected with one of the binding posts by the metallic strip. The right-hand binding post, the integral metallic strip running therefrom, and the screw shell contact are in effect a through conductor, likewise carrying currents, just as does the through conductor of the feed-through type. The other conductor is cut at the switch, so that the latter may control the current passing therefrom. We think that no problem remained to be solved after Klein's invention disclosed in the first patent in suit, and also in his patents Nos. 1,136,680 and 1,151,800. No patent can rightfully issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claim may differ. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

[3, 4] We think this record discloses that the patentee did not invent the double button snap switch, nor the two-part insulated casing, which are detachably screwed together, and he may not have a grant of invention for the idea of mounting the switch in a two-

part casing, so that, upon the removal of one of the parts, both the switch and the wires would be uncovered and revealed, as for repairs or renewals. This idea was found in the prior art. The idea of grooving and recessing the adjacent faces of the half cases, so as to house both the switch and the wires is also old. Nor does the invention rest in putting an old form of switch into an old form of casing, nor will it amount to invention to change the form or design, as was done in the second patent, so as to make it smaller, different in shape, or more compact, while still using the mechanism of the first patent.

We hold both patents invalid for the reasons above given. Decree reversed in part, and affirmed in part, with costs in both courts.