**McGILL MFG. CO. v. LEVITON et al.**

District Court, E. D. New York. November 18, 1929.

No. 4024.

George L. Wheelock, of New York City (Max W. Zabel, of Chicago, Ill., of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (George F. Scull and Charles W. Mortimer, both of New York City, of counsel), for defendants.

GALSTON, District Judge. The plaintiff is the owner of letters patent No. 1,676,254, the patent in suit, granted to V. R. Despard on July 10, 1928, for a husk or socket housing. The invention relates to electrical fixtures, more particularly for a casing or husk for a switch mechanism.

Though infringement is charged in the complaint in the usual form, alleging that the defendants are selling, using, and causing others to use the devices embodying the invention of the patent, nevertheless at the trial it was admitted that the defendants did not infringe by manufacturing or selling the complete device described in the claims in suit, but that they were contributory infringers, in that they manufactured merely the interior switch mechanism, forming one of the elements of the claims, and sold such mechanism to fixture manufacturers, for the sole purpose of enabling fixture manufacturers—known as bracket manufacturers in the trade—to assemble and sell the completed article.

The purpose of the invention as stated in the patent is to provide primarily a particular kind of inclosure for a switch mechanism. The inclosure, it seems, is to be provided with an opening in its side wall to enable conductors to be led to a fixture, presumably a fixture on the wall of the room. This inclosure likewise is provided with an opening in one end through which part of the switch-operating mechanism extends. The inclosure is preferably to be made of porcelain or other insulating material. Other material can, of course, be employed.

It is to be noted that the switch mechanism may be of any kind and may be mounted in the inclosure in any suitable manner. By the phrase "switch mechanism," as used in the specification, the inventor does not refer merely to the switch means comprising the contact members, but to the entire mounting for the switch mechanism.

A second purpose of the invention is to provide co-operating means on the switch mechanism within the inclosure for preventing relative rotational movement of the switch mechanism in the inclosure. This purpose will not be considered further, for at the trial it was admitted by the plaintiff that

the defendants did not embody in their switch mechanism means for preventing the relative rotational movement described.

Incidental additional purposes of the invention are then detailed. One is to provide suitable means for securing the electrical fixture, comprising the inclosure member, to a suitable tubular member or conduit, such as is usually used in fixtures of this character.

It is also sought to provide a device of the kind described with an internal shoulder for receiving the switch mechanism and to provide means extending through the end wall of the housing or inclosing member having clamped means co-operating therewith to clamp the switch mechanism in position.

Finally, the last specific purpose of the invention set forth states that the device is adapted to be placed in position either with the lamp receiving socket member extending upward from the switch mechanism or depending therefrom.

At the trial plaintiff placed only claims 7, 8, 9, and 10 in issue.

The validity of claims 7, 9, and 10 is vigorously contested. Claim 8 may be disregarded because the defendants' mechanism does not, as I have indicated hereinbefore, provide co-operating means to hold the lamp socket and switch mechanism against rotation.

Claim 7 reads as follows: "7. A lamp bracket having a hollow body portion, means for supporting said body portion having provision for leading conductors toward the interior of said body portion, a lamp socket and switch carrying framework insertable into said body portion at one end thereof, means secured to said framework and extending through the opposite end of said body portion and accessible from the exterior thereof for detachably securing said lamp socket and switch carrying framework in said body portion and switch mechanism operating means extending through said body portion at said last mentioned end thereof substantially on the axis of the lamp socket."

As an anticipation of the device defined in this claim, the defendants rely on letters patent No. 1,465,836 to A. B. Barnes, on an application filed February 16, 1922. The Barnes patent shows a wall bracket for an electric fixture, which has a body portion 1, made up of two members, a cup 1 and a cap 2, supported on or by a tube 5, which is in turn suitably supported or connected with a wall plate or bracket 6. The circuit wires are contained in a cable 8 and are fed in at 9 to the arm 5 and connected in the usual man-

ner to a lamp socket 3. The lamp socket 3 is supported on a threaded nipple 13 extending through an opening in the bottom of the inclosure 1.

Barnes says (page 1, lines 71–86):

"The bottom of the socket is in the usual manner formed with a screw-threaded bore, and in the construction shown is fitted with a threaded hollow pipe 13. This pipe extends downwardly from the end of the socket and is, of course, in line with the axis of the socket. This pipe is adapted to pass through an opening such as 14 in the bottom of the cup 1. It may be threaded through such opening or may pass loosely therethrough."

"The lower end of the pipe 13 is to be received in a threaded bore 15 of a nipple 16. This nipple is provided with a smaller bore 17 extending therethrough in line with the bore of the pipe 13."

The pull chain 4 is passed through a lateral opening 18 in pipe 13, and thence downward through the pipe and the bore 17 to the nipple 16. The switch is operated by pulling on the chain 14 coincident with the axis of the socket.

A comparison of this structure, as thus disclosed in the Barnes patent, with claim 7, which may be regarded as the broadest of the claims in issue, reveals then the following similarities:

"A lamp bracket with a hollow body portion" of the patent in suit is shown in the Barnes patent, as the cap 1 with its cup 2.

"Means for supporting the body portion" of the Despard device is the arm 5 of Barnes.

"Provision for leading conductors toward the interior of said body portion" is shown in the conductors 8 of Barnes.

"The lamp socket and switch carrying framework insertable into the said body portion at one end thereof" is the socket 3 of Barnes, which clearly is insertable into the upper end of the body portion 1–2 of Barnes.

"Means secured to said framework and extending through the opposite end of the said body portion and accessible from the exterior thereof for detachably securing said lamp socket and switch carrying framework in said body portion" are the hollow pipe 13 and the nipple 16 of Barnes.

"And such mechanical operating means extending through said body portion at said last mentioned end thereof substantially on the axis of the lamp socket" is the pull chain 4 of Barnes.

Therefore I find that the device defined in claim 7 of the patent in suit is anticipated by the Barnes patent, for the Barnes disclo-

sure is of every element of the claim defining the device, each element functioning in exactly the same way and producing the same result.

I am not unmindful, however, of the fact that, though the hollow body portion of the device of the patent in suit is in one piece, the equivalent body portion of the Barnes device is in two parts. Obviously no invention was required to consolidate the members *1* and *2* of the Barnes body portion.

As to claims 9 and 10 of the patent in suit, they are somewhat narrower than claim 7, for in the former claims we find "provision for enclosing lead-in conductors extending toward the interior of said casing." This provision is likewise found in Barnes.

Further limitation in claims 9 and 10 is found in defining the lamp socket and switch mechanism carrying framework insertable "as a unit into said casing." This is also true of Barnes.

Another limitation is "that the outer extremity of said lamp socket is substantially flush with the face of said casing." Barnes discloses a similar construction. In any event the relative levels of the lamp socket and of the casing or housing are a mere matter of the artisan's choice.

Holding as I do that the Barnes patent is an anticipation of claims 7, 9 and 10, and that claim 8 is not infringed, it is not necessary to discuss the other prior art which the record discloses.

It may be noted though that the Dale device is very much like the structure shown in the Barnes patent, except that it provides on the casing a stirrup like member against which the shouldered nut on the nipple inside of the body portion can be drawn by the exterior nut.

The Bryant catalogue is also of interest as showing that prior to the time of the invention of Despard, manufacturers of electrical apparatus had constructed candle sockets embodying switch mechanism in which the pull chain extended downwardly and in which the switch mechanism was supported on an internal threaded member. In consequence all that Despard did was to take one of those lamp sockets illustrated in the Bryant catalogue and add a threaded nipple to the internal threaded member of the socket. Dale in effect did the same thing.

In this view of the question of validity of the patent, it becomes unnecessary to discuss the subject of infringement or contributory infringement.

A decree may be entered dismissing the bill.