150

## CUTLER-HAMMER, Inc., v. CARLING TOOL & MACHINE CO., Inc.
### No. 2128.

District Court, D. Connecticut.
May 20, 1932.

Bristol & White, of New Haven, Conn. (Horace L. Rockwell, of New Haven, Conn., of counsel), and Bottum, Hudnall, Lecher, McNamara & Michael, of Milwaukee, Wis. (John W. Michael, of Milwaukee, Wis., of counsel), for plaintiff.

T. Clay Lindsey, of Hartford, Conn., for defendant.

HINCKS, District Judge.

This is a bill brought to restrain the alleged infringement of patents for electric switches, as follows: No. 1,240,459, issued to Klein, September 18, 1917; No. 1,651,035, issued to Meuer, November 29, 1927 (hereinafter called "first Meuer patent"); and No. 1,783,665, issued to Meuer, December 2, 1930 (hereinafter called "second Meuer pat-

ent"). To the complaint the usual defenses of invalidity and noninfringement have been imposed. And, in addition, the defendant, to the claim of infringement of the Klein patent, pleads the defense of laches.

The plaintiff bases its claim of infringement upon three switches of the defendant's manufacture in evidence as Exhibits A, B, and 22.

For its charge of infringement in respect of switch A, plaintiff relies upon claims 1, 2, 4, 5, and 6 of the Klein patent, and upon claim 1 of the first Meuer patent. Its charge of infringement in respect of switches B and 22, the plaintiff bases upon claims 1, 5, and 6 of the Klein patent, and claims 2, 3, and 22 of the second Meuer patent.

### Klein Patent.

All of the claims of the Klein patent are for combinations. Claim 1 reads as follows: "1. A switch for concealed mounting, comprising, in combination, an insulating casing, a snap switch mechanism inclosed therein and having an operating member extending therebeyond, a bushing having an opening to receive said operating member, means for securing said bushing to said casing, and adjustable means carried by said bushing for clamping said casing to a suitable support."

The object of this patent is stated to be (inter alia) to provide improved means for attaching the switch to a support. Indeed, the plaintiff throughout trial and argument has emphasized the fact that the great value and distinguishing characteristic of this patent is its adaptability for "one-hole mounting."

This feature of the switch is obtained by uniting with the switch a means for mounting consisting of a hollow metal bushing built into the top of the casing of the switch. Through the hollow core of the bushing extends the operating member of the switch. The exterior of the bushing is threaded and equipped with a nut. Thus the switch is peculiarly adapted for use in canopies; for notwithstanding any irregularity in the surface of the canopy, the means disclosed permit the switch to be snugly and conveniently mounted without other adaptation of the canopy than the single aperture for both the mounting and operating means. The result is that the switch behind, or inclosed within, a panel or canopy can readily be mounted by one person simply by inserting the bushing through an aperture of the panel or canopy, and by screwing the nut upon the bushing

from the outside, leaving the operating member also accessible from the outside.

The evidence discloses that the device of the patent for a time enjoyed considerable commercial success. In the validity of the patent also the trade to some extent acquiesced, and several manufacturers were licensed by the plaintiff. Such acquiescence, however, was by no means general.

The claims relied upon all state combinations, the elements of which it must be conceded are without novelty. The defendant contends that the combination itself is wholly lacking in novelty and patentable invention.

It may well be doubted whether any one of the references upon which the defendant relies shows a complete anticipation of all of the elements of the combination. Thus Nevins, No. 553,014, lacks the bushing for mounting; also the insulated casing. Hepburn, No. 743,281, lacks the insulating casing; also the snap-switch mechanism and the bushing for mounting. Hewlett, No. 833,208, discloses a switch not completely encased and apparently lacking in a snap-switch mechanism. And Schaefer, No. 959,886, seems to lack the snap-switch mechanism, and its casing also is only partly insulated. Greengard, with his filing date of October, 1910, was preceded by Klein, whose combination I find to have existed as early as January, 1910. But it is not necessary to pass upon the novelty of the combination in view of my conclusion that it lacks invention.

Clearly so much of the combination as comprises the switch mechanism, with its operating member and the casing, involves nothing more than a matter of design. Cutler-Hammer v. Beaver (C. C. A.) 5 F.(2d) 457. But the plaintiff strenuously insists that patentable invention was required to add to this combination the means for mounting described above. This contention I cannot sustain.

The patentee having before him an inclosed switch in compact form was confronted with the problem of mounting. With ordinary mechanical experience, his first thought would lead him to consider the suitability of such conventional devices as bolts or screws. Having in mind a mounting device suitable for metal canopies now coming into vogue, he discards the screw as unsuitable for use with metal. A plurality of bolts has obvious disadvantages. So he prefers a single bolt. For added convenience and simplicity, instead of a loose bolt which of itself would require means of connection with the switch unit, he builds a bushing exteriorly threaded into the switch inclosure. This, clamped with the nut from the exterior, furnishes the mounting. Surely, thus far no inventive genius has been required.

But the problem is only partly solved. The operating member from the switch must also be accessible from the exterior. It must penetrate the canopy either by the aperture for the mounting bushing, or through another aperture. It being of obvious advantage to avoid additional perforations of the canopy, the sole remaining problem of the patentee is to bring the operating member through the aperture already occupied by the mounting bushing.

It is not necessary to decide whether true invention would have been disclosed by the successful solution of this problem without any aid from the prior art; for in fact the prior art did disclose the solution. Thus Shaefer, Hewlett, and Hepburn, all referred to above, each discloses the device of an operating member, housed in a hollow bushing penetrating the panel of the mounting so that the mechanism inside the panel is operable from without. To correlate a device thus borrowed from the art with his other elements, though accomplished with conspicuous success, was a matter of skillful design rather than invention. Vanderburgh v. Truscon Co., 261 U. S. 6, 43 S. Ct. 331, 67 L. Ed. 507; Bryant Electric Co. v. Reno Sales Co. (C. C. A.) 16 F.(2d) 797; McGill Mfg. Co. v. Leviton (D. C.) 36 F.(2d) 228.

The situation therefore seems to be one for the application of the familiar rule that it is not invention to combine old devices without producing any new mode of operation. Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866; Victor Cooler Door Co. v. Jamison Cold Storage Door Co. (C. C. A.) 44 F.(2d) 288; Concrete Appliances Co. v. Gomery, 269 U. S. 185, 46 S. Ct. 42, 70 L. Ed. 222; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438.

The plaintiff contends that its combination is patentable, in that it produces a new function and better results within the rule of Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. Apparently it is plaintiff's contention that it has a switching device which for a new function has a self-contained and peculiar means for support, and that its device, thanks to this new function, obtains a new and better result in that

the switch can be readily mounted through a single aperture on a canopy or panel. But as I have already pointed out, the mounting means, independently considered, is old. Likewise its function and the result of its operation is old. Consequently if there is in the combination any new function or result, it is not one which is "a product of the combination"; but is at most "the complete product of one of the combined elements." And so, the new function or result, even if present, is not such as to import invention within the rule of Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241. For certainly in this case neither the function of the mounting means, nor the result obtained thereby, is in any sense a "product of the combination." On the contrary, its result is merely one of several results and is the complete product of one only of the elements in the combination. And the fact that the mounting means and switching means may operate simultaneously and successfully does not indicate a combined function or result such as to evidence patentable invention. Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196.

After all, the rule which the plaintiff invokes is predicated upon the proposition that a new result imports invention only if the result in question has been "long desired, and sometimes sought, but never attained." Walker on Patents, § 63. But the art of electric switches into which the patentee herein has ventured, though crowded in numbers, is young in years. At first the art simulated the gas lighting art, much as a child simulates its elders. During this period there was obviously no need or demand for the self-mounting switch for household purposes. But when the art, under the stimulus of æsthetic and practical considerations, had developed to such an extent as to make a demand for the one-hole mounted, insulated switch, Klein promptly filled that need. The record does not show an art long yearning for an unfilled need, nor a line of patentees long and unsuccessfully seeking a solution. The case, therefore, is not one in which invention can be postulated upon the result alone.

Nor can I sustain the plaintiff's contention that the references to Shaefer, Hewlett, and Hepburn, having to do with switchboards and switch indicators, pertain to a nonanalogous art, and hence may not be used as a measure of the inventive quality of Klein's work. A similar contention was definitely overruled in Vandenburgh v. Truscon Co., 261 U. S. 6, 43 S. Ct. 331, 67 L. Ed. 507. In any event, in the evidence in this case are catalogues of leading manufacturers, as indeed that of the plaintiff itself, which show a variety of apparatus wide enough to include both switches such as Klein's and apparatus such as that of the references, thus indicating at least roughly their common membership in one broad generic class.

■ Accordingly, I hold the Klein patent void for lack of invention.

### First Meuer Patent.

■ This is patent No. 1,651,035, issued November 29, 1927, on an application filed June 8, 1921. The invention, as stated in the specifications of the patent, relates to electric switches and:

"While not limited thereto, the invention is particularly applicable to rotary switches for concealed mounting and has among its objects to provide a simple, efficient and compact switch therefor.

"Another object is to provide a rotary switch of the aforesaid character designed to minimize its dimension axially of its rotary element to thereby adapt the same to relatively flat or shallow canopies and the like."

The disclosure of the patent comprises terminal devices set in an insulating base electrically connected with two fixed contacts located on opposite sides of a rotary bridging contact and co-operating therewith. All parts of the fixed contacts and terminal devices are located "substantially" within the axial extent of the movable contact. These parts are all inclosed between the insulating base and a metal cover secured thereto. To the metal cover is attached a supporting nipple through which the operating member of the switch mechanism extends.

All these elements are included in claim No. 1 of the patent upon which alone the plaintiff relies.

It thus appears that the combination claimed comprises several of the elements of the Klein patent in suit, including the hollow bushing or nipple, which is adapted for one-hole mounting and through which the operating member is actuated. Instead of calling for an insulating casing (whether in one or two longitudinal parts, as in Klein), it incloses the switch mechanism between an insulating base and a metal cover attached thereto. No functional effect differing from that of the Klein patent is claimed to result

from the change in casing. This element therefore clearly may be classified as a matter of design and laid out of further consideration.

The essential development of Meuer over and above Klein is confined to the switch mechanism and has to do with the coplanar relationship which is specified to exist between the axial extent of the movable contact and the fixed contacts including terminal devices. Obviously it is through this element that Meuer seeks to obtain a switch with a minimum "dimension axially of its rotary element," thus adapted for use in "flat or shallow canopies."

Successful though his efforts in this direction have been, it is impossible to find that any invention inspired the process.

The coplanar relationship between the elements of the switching mechanism produces no new function, no new mode of operation, in the combination. That it produces a new or better result, in that it contributes to a switch, more flat and compact than is possible with a mechanism in which this element is absent, does not necessarily indicate invention. For such a result is in no sense a functional result; it is merely the by-product of skillful design. Cutler-Hammer Mfg. Co. v. Beaver Machine & Tool Co. (C. C. A.) 5 F.(2d) 457. In any event, such a result could not be said to be a result "of the combination" as distinguished from "the complete product of one of the combined elements," within the rule of Hailes v. Van Wormer, supra.

Nor does the prior art support the plaintiff's claim of inherent invention in the first Meuer patent. It is true, I think, that the prior art discloses no rotary switch in which fixed contacts and terminals as well as the bridging movable element are wholly confined within the same planar dimensions. But Anderson, No. 1,182,729, discloses a rotary switch mechanism in which there is an equivalent for every element of Meuer, and each element in Anderson's switching mechanism co-operates with the other element, precisely as in Meuer. With Anderson's drawings before him, it was merely a matter of design for Meuer to cut down the axial extent of Anderson's terminals and fixed contacts and thus obtain a complete mechanism with less depth. After all, the patent claim in issue calls only for a "substantial" coplanar relationship. As the defendant points out, Meuer himself fails fully to disclose such an element, in that his fixed contacts are riveted to supports which are affixed in the base. These parts are "live," which, as plaintiff's own expert testified, is "an unfortunate circumstance that involves increasing the depth of the base" by the addition of a strip of insulation. Of course, to the extent, small though it be, that the terminal device is sunk into the base it is not within the axial extent of the movable member. I should indeed be reluctant to hold that the disclosure of the patent failed to support the claims in this respect. But this "unfortunate circumstance" tends to confirm my conclusion that any advance shown by Meuer over Anderson, for example, is but evidence of skill in design.

But if no invention is discernible in Meuer's switching mechanism, nothing is left in the combination to distinguish it from Klein. We have merely a snap-switch mechanism of improved design inclosed between an insulating base and a cover (that the cover is of metal instead of insulating material betokens no invention) secured upon the hollow bushing through which emerges the operating member. No improvement, indeed no change, of the functional process is discernible. A monopoly of such a device is not to be sanctioned.

Holding as I do that this patent is invalid for want of invention, it is unnecessary to give to the issue of infringement the careful consideration that is required by the nature of the defense. The defendant's switch, which is charged to be an infringement of this patent, utilizes terminal devices loosely held in position within the inclosure of the switch merely by the presence of the cover upon the base. With the cover removed, the terminal devices will fall out of the inclosure. The file wrapper discloses that Meuer's original claim 6 is in substantial conformity with claim 1 as finally allowed, on which the plaintiff now relies, except that it omits the recital that its terminal members are "permanently secured," an element finally included in claim 1. It may indeed be doubted whether an infringement can be predicated upon a switch which does not utilize an element of the claim in suit, which was thus apparently essential to its allowance.

### Second Meuer Patent.

This is patent No. 1,783,665, issued on December 2, 1930, upon an application filed November 16, 1928.

The claimed invention is stated to relate to improvements in electric snap-switches of the toggle type. Among its objects are to

provide such a switch composed of a minimum number of parts which may be readily and quickly assembled, with an extremely shallow base or housing. The plaintiff relies upon claims 2, 3, and 22. For the purposes of this decision, these claims seem to be without substantial distinction. Claim 3 is as follows: "3. In a toggle snap switch, in combination, a recessed insulating base, a pair of spaced parallel contacts located within said recess and having their upper edge portions substantially flush with the upper surface of said base, a cover plate overlying said base and adapted to retain said contacts within said recess, a hollow metallic bushing secured to said cover plate, two vertically spaced pairs of alined openings in said bushing, a substantially U-shaped carrier the arms of which are provided with integral outward projections adapted to be forced into the lower pair of openings, a bridging contactor riveted to the lower end of said carrier, a toggle lever pivoted in the upper pair of openings and having an abutment at its lower end, an abutment on said carrier, and a compression spring interposed between said abutments to effect snap movement of said contactor into or out of engagement with said contacts upon movement of said toggle lever to opposite positions respectively."

The plaintiff, on brief, concedes that the insulated casing, the supporting bushing with its adjustable clamping device, and the operating member extending through the bushing, all were disclosed in the Klein patent in suit. Nor is it claimed that there is anything "broadly new" in the character of the switch mechanism, toggle switches being old in the art. And so, necessarily, if novelty and patentable invention, contrary to the defendant's contention, pertain to this combination, they must be found, as apparently the plaintiff concedes, in "its details of construction and in the organization and association of the various parts of the device."

The plaintiff claims that the arrangement of one-piece terminals and fixed contacts in the slotted recesses of a moulded base, co-operating with a movable contact consisting of a rivet suitably insulated upon the base of a U-shaped yoke pivoted into the bushing and actuated by a helical spring interposed between the floor of the yoke and an operating member, also pivoted into the bushing, is a combination of true invention. But Newton, No. 1,275,726, shows the pivoted yoke, spring and oscillating operating member functioning just as shown by Meuer. And Newton, No. 1,346,553, shows a similar construction with a movable contact secured to, but insulated from, the yoke by a rivet providing an abutment for the spring, precisely as in Meuer; and an earlier patent to Meuer, No. 1,685,500, shows a spring arrangement associated with a yoke and operating member just as in the patent in suit.

As to the arrangement of the moulded base, Kupferman, No. 1,607,632, shows the "fixed" contacts in recesses held in place by the cover upon the base. And substantially the same organization is found in Nero, No. 1,704,625.

Thus, we find again a combination of numerous elements, all of which are old in the art, and all of which, when assembled into the device of the combination, function and co-operate precisely as in the earlier art. It therefore becomes apparent that the patentee again has drawn upon his skill in design. The result may be a triumph of design, but it lacks the quality of patentable invention. Therefore, on the authorities cited and the reasoning set forth in my discussion of the Klein and first Meuer patents, I hold this patent also invalid for lack of invention.

The bill must be dismissed, with costs.