McGHEE et al. v. LE SAGE & CO., Inc.

Circuit Court of Appeals, Ninth Circuit.
May 27, 1929.

No. 5743.

Lyon & Lyon, Frederick S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., for appellants.

Raymond Ives Blakeslee, of Los Angeles, Cal., and George H. Mitchell, of New York City, for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. Appellants brought this suit for the infringement of patent No. 1475306, issued November 27, 1923, to James W. McGhee. The patent relates to a drapery hook, which, as shown in the drawings and embodied in the commercial product, consists of a piece of spring wire a little over three inches long, blunt at one end and drawn to a point at the other, so shaped that the major portion thereof, beginning with the blunt end, forms an inverted "U" and the other end is bent outward with a sharper but slightly looped curve until the upper part thereof approximates contact for some distance with the leg of the U. In use the device is engaged with the drapery by an upward thrust of the pointed arm into the top border, and the other end is hooked over the rod or bar or other means provided for hanging the drapery. The spring pressure between the pointed arm and the hook tends to hold the device to the impinged fabric.

Being the manufacturer of the hook defendant sells, the H. L. Judd Company of New York assumed the defense. Its device is substantially identical with that of the plaintiffs, and the real issue is of the validity of the patent. Holding that the patent discloses no invention the court below entered a decree dismissing the suit, and from that decree plaintiffs prosecute this appeal. They concede that when they entered it the field was crowded, and they claim for their patent only a narrow range.

With the lower court, we fail to find in plaintiffs' device any patentable novelty; certainly there is no invention in the hook member. Hooks of all shapes and materials are among the commonest things of life. In size, strength, and shape they are to be adapted to needs and tastes, and the adaptation of a hook to suit the pole, rod, bar, or rings from which the drapery is to hang is readily made by any person of common intelligence. There is no invention.

With reference to the other member, undoubtedly plaintiffs' device is superior to one which must be sewed on or otherwise permanently attached to the fabric. But if it be assumed that in the conception of frictional or pressure attachment there is invention, it did not originate with McGhee, nor is there any novelty in the means employed by him in making such attachment. For application of this principle in divers forms, we are relieved of the necessity of resorting to foreign fields. Prior concrete embodiments are to be found in the drapery art itself. For examples: Under license from

the patentee of the Ashmore patent No. 1069999, dated August 12, 1913, H. L. Judd & Co. had, for eight years or more before plaintiffs' patent, manufactured, illustrated in their catalogue and sold on the market a device a sample of which was received in evidence as "Exhibit E." In principle, function, purpose, and mode of use the hook is identical with the plaintiffs' device. True, by using a longer piece of wire sharpened at both ends and folding it back upon itself at the middle before bending to the shape of plaintiffs' hook, Judd & Co. made a hook with two prongs or arms instead of one; but this is a matter of equivalents and mechanical detail. Both prongs are by a single thrust inserted into the fabric, are concealed in the same manner, and serve the same purpose as is claimed for plaintiffs' device. In their three several catalogues sent out to the trade, all prior to 1900, James Whitfield & Sons, George Whitehouse, and Tonks, Limited, brass manufacturing establishments in Birmingham, England, exhibit under the head of "Drapery Hooks" a device identical with that of the plaintiffs in respect to the member engaging with the fabric. The only difference is that the hook-end is small and doubtless intended to engage with a pole ring instead of over the pole or rod. Copies of these catalogues were long in the possession of H. L. Judd & Co. prior to the issuance of plaintiffs' patent and were used by it in ordering goods to be sold in this country. It is a fair inference, if it is not positively shown, that they were of wide circulation in the trade, and we think they were competent evidence of the prior art. Jockmus v. Leviton (C. C. A.) 28 F.(2d) 812. It is wholly unimportant that they contain no descriptive matter. The devices are listed as drapery hooks, and the cuts themselves carry their own teaching.

From the fact that plaintiffs' device has gone into a comparatively wide use, especially upon the Pacific Coast, it is argued that there must be novelty and invention. But the conclusion does not necessarily follow. Particularly in respect to a device so simple, merit may count for less than salesmanship. With aggressive agencies, generous advertising, and attractive prices, a device new only in slight and unimportant differences of form, size, and finish may drive its less enterprising competitor from the market. But ingenuity of salesmanship is not patentable invention. Nor do we find great significance in the fact that H. L. Judd & Co. became the manufacturer of a similar hook. If, owing to aggressive marketing of

a nonpatentable hook differing slightly only in appearance, weight, and finish from its own, it discovered it was losing trade, there was no legal reason why it should not meet its competitors on their own ground by manufacturing and selling a device identical in appearance for the same price.

The decree is affirmed.