**TAMPAX, Inc., et al. v. PERSONAL PRODUCTS CORPORATION et al.**

Civ. No. 1397.

District Court, E. D. New York.
April 18, 1941.

Motion Requiring Plaintiffs to Pay Reasonable Expenses Denied May 10, 1941.

Pennie, Davis, Marvin & Edmonds, of New York City (W. Brown Morton, of New York City, Harry C. Alberts, of Chicago, Ill., and H. Stanley Mansfield, of New York City, of counsel), for plaintiffs.

Kenneth Perry, of New York City (Merrill E. Clark, Kenneth Perry, Albert J. Fitzpatrick, and William J. Barnes, all of New York City, of counsel), for defendants.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of two patents.

1. Patent No. 1,964,911, issued to Earle C. Haas, for catamenial device, granted

July 3, 1934, on an application filed May 22, 1933, of which Claim 1 is in suit.

2. Patent No. 2,024,218, issued to Earle C. Haas, for catamenial device, granted December 17, 1935, on an application filed June 2, 1934, of which Claims 1, 2 and 3 are in suit.

The first patent aforesaid, No. 1,964,911, in the specification states "This invention relates to a catamenial device, and the process of manufacturing the same. It relates more particularly to a catamenial device of the type illustrated in copending application, Serial No. 776,179, Patent No. 1,926,-900 of which this application is a continuation in part."

The second patent aforesaid, No. 2,024,-218, in the specification states "This invention relates to a catamenial device and to means for manufacturing, packing and using the same. It relates more particularly to a catamenial device of the type illustrated in applicant's Patent No. 1,926,-900 and copending application, Serial No. 672,145 now Patent No. 1,964,911, of which this application is a continuation in part."

The plaintiff Tampax Sales Corporation is a Colorado corporation and the owner of the patents in suit.

The plaintiff Tampax Incorporated is a Delaware corporation and the exclusive licensee of the patents in suit.

The defendant Personal Products Corporation is a New Jersey corporation and the manufacturer of the alleged infringing devices. It is a subsidiary of Johnson & Johnson of New Brunswick, New Jersey.

The defendant Isidore H. Schwartz, trading as Highland Pharmacy, conducts a drug store at 3079 Fulton Street, Brooklyn, New York, in this district and has sold some of the alleged infringing articles at retail.

There being no occasion for continued reference to the defendant Schwartz, I shall hereinafter in this opinion use the term defendant as referring to the Personal Products Corporation alone.

The defendant interposed an answer and is now defending on the defenses of invalidity and noninfringement as to both patents and as to Patent No. 2,024,218 that the precise device of the claims was on sale in this country and was described in printed publications more than two years prior to the application for the patent.

The alleged infringing articles comprise vaginal tampons known as "Meds", and com-bined containers and applicators in which those tampons are sold.

I will consider the patents in their order.

### Patent No. 1,964,911.

This patent is directed to a vaginal tampon, or catamenial device. In Fig. 4 there is disclosed an applicator for such device of a particular form the use of which by any body is not disclosed in the record. The only claim in suit is Claim 1 which is for the tampon itself and there is no mention of an applicator in that claim nor in any claim of said patent in suit.

The patentee in the patent in suit speaking of catamenial devices of this character says, "Such devices comprise an absorbent member to be placed in the vagina with a depending, flexible withdrawing member by means of which the absorbent member may be withdrawn."

The patentee then states reasons why prior vaginal tampons were objectionable including that they were unsanitary and inconvenient to insert, difficult to withdraw, and "liable to separate in the vagina so as to leave fibers or a portion of the pad remaining therein."

The patentee in the specification of the patent in suit says, "The principal object of the invention is to provide a catamenial device of this character which will have a maximum of expansion when in use; a minimum of size when not in use; which will insure the removal of all of the fibers of the catamenial pad when the pad is withdrawn; which will straighten and elongate itself to a minimum diameter during withdrawal; which can be conveniently inserted."

To impart the last two attributes to the tampon the patentee says, "In the strips 10 the fibers naturally extend laterally so that the strips could be easily pulled apart in a longitudinal direction, but would resist pulling apart in a lateral direction. To increase the longitudinal strength of the strip, a thread seam 11 is stitched throughout the length thereof. This seam firmly ties all of the lateral fibers together and produces a strip which resists separation both laterally and longitudinally." See Fig. 1.

The patentee further said, "The next step in the manufacture of the device is to fold in the pad 11 into convolutions such as shown in Fig. 2 to reduce the length thereof." The designation of the pad, at that point in the patent, by the No. 11 is an error, and it should be by the No. 10, as that is

the number designating the pad, and 11 is the number designating the stitching in the other portions of the patent in suit.

The withdrawing member 12 is formed by continuing the stitching beyond the extremity of the strip 10.

The patentee then describes the completion of the tampon by saying, "This folded convoluted pad is then placed into a die and pressed under high pressure from both the sides and the end to form a hard cylindrical core 13 with the withdrawing member 12 extending therefrom."

Claim 1, the only claim of that patent in suit, reads as follows: "1. A catamenial device comprising: a highly compressed, self-sustaining, absorbent core; and a flexible member secured to and depending from said core to form a withdrawing member, said core comprising a compressed, convoluted strip of absorbent material, said core being considerably shorter than said strip."

The defendant offered in evidence the following prior art patents.

Patent No. 582,926 to Robert W. Johnson, for surgical absorbent dressing, granted May 18, 1897 which discloses a substitute for sponges used by surgeons in surgical operations, or in the treatment of wounds in the form of a compressed tablet of sterilized absorbent cotton having one or more of its faces protected by other material. The patentee in that patent says, "The sterilized cotton tablets can also be obtained by packing the absorbent cotton in a die and subjecting it to heavy pressure, and thus bunching it in the form of tablets having substantially the consistency of blotting paper."

Patent No. 749,220 to Edmund Morse Pond, for medicated tampon, granted January 12, 1904 which discloses an improved tampon particularly useful for internal medication of the uterine system or the rectum.

The defendant in the manufacture of its tampon, of which complaint is made in this case at bar, essentially follows the disclosure of that patent in contrast to the first patent in suit.

That patent starts with a strip of absorbent cotton whose fibers run longitudinally not transversely. Then it ties a withdrawal cord about the middle of the strip instead of sewing a thread longitudinally of the strip, and extending it beyond to provide a withdrawal cord. Next it reduces the length of the strip to about one half by doubling it over about its corded middle to reduce the length of the strip in preparation for the compression of the material to its final size and shape, instead of convoluting the strip. After having doubled the strip over upon itself the doubled strip is compressed to its final size and shape, instead of being convoluted. The result being that the strip is merely creased haphazardly as a necessary incident to the compression operation itself. By the use of the withdrawal cord the tampon is withdrawn in double thickness and not in a single thickness. In that patent it is not specifically stated that the contemplated compression is sufficient to render the pad self-sustaining, but as is shown by the prior art cited it was old to do that. It is true that the applicator is of a different form, but that does not require atention at this time as the claim in suit of the first patent in suit deals with the tampon, and not the applicator. There is an additional factor in Pond which suggests the use of a separate medicated capsule but that does not require consideration.

Patent No. 1,074,245 to Henry Casevitz for hygienic textile sponge, granted September 30, 1913 discloses a sponge of textile material and the patentee says, "In forming my hygienic sponge of cotton for example I preferably take a piece of hydrophil cotton of rectangular form, Fig. 1, and give it a double fold as shown in Fig. 2. The piece of cotton thus folded is then placed in a tubular matrix, and subjected to pressure by a picton working in the cylinder, sufficient to compress the cotton to the form of a circular disk or cylinder as shown in Fig. 3." This would produce a self-sustaining cylinder, and of course that compression would produce incidental transverse folds, but there is no mention in that patent of the sponge being convoluted. There is no mention in the patent of a use similar to that of the patent in suit, but the method of compression of defendant's tampon is identical with the compression of that patent.

Patent No. 1,575,123 to Leon Martocci-Pisculli, for Medical Appliance, granted March 2, 1926 discloses a tampon which it states may be used "at the end of the menstrual period." Thus the art knew that such artificial sponges might be used in the course of a surgical operation or for other purposes. It also points out that you may or may not use medicants.

Patent No. 1,582,201 to Neil McL. Whittaker, for Tampon, granted April 27, 1926

discloses a heavily compressed cotton sponge comprising a strip of cotton which has been compressed into a thimble form, and has a cord passed through the center of the thimble and capsule member in which knots are provided which is the withdrawing means.

Patent No. 1,669,295 to Albert Hallenbarg, for menstrual sponge, granted May 2, 1928 discloses a folded and compressed plug of cotton with a withdrawal member. It states as an object of the invention the "provision of a device for more efficiently controlling the menstrual flow", which shows that such things have been known over a period of years as being adaptable for such purposes.

Bernays Sponge No. 11 of the Book of Patents Exhibit B B, a Johnson publication.

That sponge is merely a piece of cotton which has been compressed into disk form and is self-sustaining. On page 2 is a picture showing a withdrawing string secured to it, underneath which picture is the statement, "Each one has a hole in the center, as shown in the cut; a strong thread may be run through when needed for a tampon." The article states that it may be used for a purpose the same as the tampon of the patent in suit. Nowhere in the prior art which I have discussed is there any mention or suggestion of the tampon being "convoluted" as in the patent in suit, but it is clearly apparent that haphazard creases naturally and necessarily result from longitudinal compression in Casevitz's, Pond's and defendant's products.

An examination of the prior art clearly shows that it was old in the art to make tampons by taking a strip of absorbent cotton, and tieing a withdrawal cord about the middle, and to reduce its length about one half by doubling it over in preparation for compression of the material to its final size and shape, and after having doubled the strip over upon itself to compress the doubled strip to its final shape and form.

In so far as is pertinent in the case at bar, defendant follows the prior art.

The prior art does show that haphazard creases naturally and necessarily result from longitudinal compression, and I saw the demonstration on behalf of the defendant in Court, and that is exactly what took place in the making of defendant's device. I entirely disagree with plaintiff's contention that there is any convolution in defendant's device as is described in the first patent in suit.

■ Comparison must be of the defendant's device with the patent in suit, and not with plaintiff's commercial device; Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 39 F.2d 769, and it was clearly apparent to me that there was no intentional pre-compression, convolution, as described in the first patent in suit in the defendant's device, but merely the haphazard creasing which was old, and well known in the art.

On September 12, 1933 there was granted to Earle C. Haas a patent No. 1,926,900 for a catamenial device, on an application filed November 19, 1931, which discloses a tampon which is started by taking a strip of cotton with its fibers running transversely, and then sewing a longitudinal seam the full length of the strip to hold the fibers together and continuing the seam beyond the end of the strip to provide a withdrawal cord, and finally compressing the strip into a self-sustaining cylinder or core. That is exactly what the same patentee does in the later patent No. 1,964,911, the first patent in suit, except that in the first patent in suit there is disclosed the added element the pre-compression "convoluting" step of Fig. 2 of the later patent, the first patent in suit.

Patent No. 1,926,900 has the haphazard creases in the strip, which it appears by the prior art and the opinion of defendant's expert is necessarily the result of compression and this is also found in the defendant's product of which complaint is made in the action at bar.

Patent No. 1,926,900 distinguishes from the prior art by the longitudinal stitching of the strip. This defendant does not do.

Patent No. 1,964,911, the first patent in suit, distinguishes from Patent No. 1,926,900, and the prior art by the inclusion therein of the pre-compressing convoluting step.

That this is an important and necessary element of the only claim in suit clearly appears from the first patent in suit in which this step is described and claimed, and in which the patentee does not leave those skilled in the art to determine what he meant by the words convolutions and convoluted by referring to a dictionary, but included in his specification of that patent the following, "The words 'convolutions' and 'convoluted' as used herein—mean—folded in curved or tortuous, sinuous windings, that is bending in and out in a serpentine, wavy or accordian folded form."

As so interpeted nèither convolutions or convoluted as applied to the strip are found in the earlier Haas Patent No. 1,926,900 or the defendant's device.

In his application for the earlier Patent No. 1,926,900, the patentee tried to obtain a claim like Claim 1 of the first patent in suit describing the final product as "convoluted". There was no disclosure of the pre-compression convoluting step of the first patent in suit in that application, and the Patent Office took the position that convoluted did not accurately describe the mere result of compression, and rejected the claim on that account.

The patentee acquiesced in it by cancelling the claim from that application, and filed an application termed a continuation in part as a basis for the term "convoluted" in the claim in suit, the pre-compression convoluting step of Fig. 2.

Thereafter the Patent Office allowed Claim 1 of the first patent in suit describing the product as convoluted and the patentee must be strictly held to that restriction. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335.

The application for the first patent in suit and for Patent No. 1,926,900 were copending in the Patent Office. but that does not give the same patentee the right to have two patents for the same invention. Miller v. Eagle Manufacturing Company, 151 U.S. 186, 188, 14 S.Ct. 310, 38 L.Ed. 121; Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, 744; Wirebounds Patents Co. v. Saranac Automatic Machine Corporation, 6 Cir., 65 F.2d 904, 906; Cutler Hammer Manufacturing Co. v. Beaver Machine & Tool Co., 2 Cir., 5 F.2d 457, 461. While the patentee might have two valid patents on the same article of manufacture, he could only have them if the claims were directed to different combinations even though they might have some elements in common. Thomson-Houston Electric Co. v. Black River Traction Co., 2 Cir., 135 F. 759, at page 764.

This is not a case of copending applications of different patentees, but of the same patentee and if he could have two patents for the same invention, the effect would be to extend the term of patent monopoly beyond that provided by the statute.

In order to sustain the later patent, the first patent in suit, there must be something more than a mere distinction of the breadth or scope of the claims of that patent and the prior Patent No. 1,926,900. Miller v. Eagle Manufacturing Company, supra; Palmer Pneumatic Tire Co. v. Lozier, supra; Cutler Hammer Manufacturing Co. v. Beaver Machine & Tool Co., supra.

The subject of double patenting was considered by me in Cadwell et al. v. Firestone Tire & Rubber Co., D.C., 13 F.2d 483, affirmed per curiam, 2 Cir., 23 F.2d 1000, and I believe the views there expressed are peculiarly applicable in the case at bar.

The action of the Patent Office appears to me to be in harmony with the opinion I have heretofore expressed, that if the term "convoluted" in the claim in suit of the first patent in suit be defined as the patentee defined it, in said patent, then it meant the pre-compression convoluting step of Fig. 2 and not the mere result of compression, there would be no double patenting, and that patent would be valid, and I will not disturb the action of the Patent Office. Benjamin Electric Mfg. Co. v. Dale Co. et al., 158 F. 617, 619, 620; H. Ward Leonard, Inc., v. Maxwell Motor Sales Co., D.C., 288 F. 62, 71, 72; Fulton Co. v. Janesville Laboratories, Inc., et al., 7 Cir., 21 F.2d 428, 432; National Tube Co. v. Steel & Tubes, Inc., 3 Cir., 90 F.2d 52, 54.

The defendant's device does not have the pre-compression step of Fig. 2, of the first patent in suit, and does not infringe.

If the term "convoluted" in the claim in suit of the first patent in suit could be held to mean the mere result of compression and to read on defendant's device in which as in Patent 1,926,900 there is no pre-compression convoluting step, it would be void for double patenting.

The first patent in suit is valid but not infringed.

### Patent No. 2,024,218.

This action is based on the three claims of this second patent in suit which relates to "a combined container and applicator for a catamenial device." It consists of two telescoping cardboard tubes arranged as shown in Figs. 3 and 4 of the second patent in suit.

The patentee in the specification of the second patent in suit in describing the object of his invention as to the container and applicator says: "Another object of the invention is to. provide an. easily disposable and efficient means for packing and protecting the catamenial core until ready for use which will also serve as an applicator for inserting the core in the vagina."

The use of the word cardboard of course includes paper.

In Claims 2 and 3 of the second patent in suit the patentee specifically restricted to a second cardboard tube contained within the first cardboard tube "said second tube being of a diameter to frictionally engage the interior wall of the first tube to hold said tubes together."

In defendant's device the inner tube is not of a diameter to frictionally engage the inner wall of the first tube and as the second patent in suit is certainly not a pioneer patent the defendant's device, of which complaint is made herein, would not infringe Claims 2 or 3 of the second patent in suit even if it was valid.

The following prior art was offered in evidence which related especially to the second patent in suit.

Patent No. 1,131,349 to Avard Augustus Ellis, for applicator, granted March 9, 1915 on an application filed May 25, 1914.

That patent discloses an applicator made in two parts, which telescope each other, and for the purpose of holding a tampon and then ejecting it by pushing the inner and smaller tube down through the larger tube, and forcing the tampon out of the far end as shown in Fig. 3 of that patent. The distinction between the applicator of that patent and of the applicator of the second patent in suit is merely the substitution of one material for another without change of purpose or mode of application. Ellis says that his tubes are preferably made of glass but "I do not limit myself to this particular form of material."

Patent No. 1,191,736 to Thomas Edgar Roberson, for applicator, granted July 18, 1916 on an application filed April 24, 1916.

That patent discloses an applicator consisting of an outer casing the speculum and an inner casing or plunger. The patentee says the applicator "is preferably of vitrified material as for instance glass or any other suitable material." The patentee further says "With the present device the method of introducing the tampon is substantially the same as with the ordinary applicator with the exception that the cord is placed in the plunger through the split 10 instead of being threaded through the same."

Patent No. 1,642,950 to Earle C. Haas, for medical-powder applicator, granted September 20, 1927 on an application filed February 24, 1927.

That patent discloses a double tube telescopic applicator, and the patentee says, "In carrying out the present invention, there is provided a heavy paper or cardboard cartridge 11 of cylindrical formation and being of a diameter such as to permit of the free movement of the same within the cylinder 5."

He thus describes a free moving inner cylinder or tube as in defendant's device and not one with a diameter to frictionally engage the outer tube as in defendant's second patent in suit.

While it is true the quotation as to material relates to the cartridge the patentee further says, "Now having particular reference to the drawing my novel applicator consists of a relatively elongated cylinder of small diameter, and constructed of any suitable material."

British Patent No. 218,725 to Frank Scrutton, for improvement in or connected with the insertion of vaginal swabs, accepted July 9, 1924. That patent discloses for the declared purpose "a set of articles consisting essentially of a tube, a propelling instrument such as a small rod or plunger and a swab or the like."

The diameter of the plunger is such as to permit it to work freely in the tube.

From my examination of the prior art it seems clear to me that there is no invention over Ellis in making the applicator of cardboard instead of glass so as to make it readily disposable after a single use. That was a mere substitution of material from which no new or unexpected result flowed and was not invention. Johnson Metal Products Co. v. Lundell-Eckberg Mfg. Co., 2 Cir., 98 F.2d 756, 758; Aero Neck-Band & Collar Co., Inc., et al. v. Beaver Mfg. Co., Inc., 2 Cir., 97 F.2d 363, 365; Minton Mfg. Co. et al. v. Continental Briar Pipe Co., 2 Cir., 93 F.2d 271, 272.

There was no invention in combining the tampon with the applicator.

There is no invention over the prior art in the second patent in suit and it is completely anticipated by the patent to Ellis No. 1,131,349 with the possible exception of the restriction in Claims 2 and 3, "the second tube being of a diameter to frictionally engage the interior wall of the first tube to hold said tube together," but that is not found in the defendant's device which follows the prior art and even if Claims 2 and 3 of the patent were held to be valid defendant does not infringe.

Patent No. 1,926,900 to Haas of which the second patent in suit is claimed to be a continuation was issued on September 12, 1933 and Patent No. 2,024,218 the second patent in suit was issued on December 17, 1935 on an application filed June 2, 1934 which was after the said Patent No. 1,926,900 was issued.

The Haas Patent No. 1,926,900 disclosed the identical cardboard applicator that is described and claimed in Patent No. 2,024,218 the second patent in suit. Compare Figs. 1 and 2 of Patent No. 1,926,900 and Figs. 3 and 4 of Patent No. 2,024,218, the second patent in suit.

During the prosecution of the application for Patent No. 1,926,900 the patentee attempted to obtain claims for this cardboard applicator, of which for example was Claim 9 which reads as follows: "A catamenial device comprising an outer cardboard tube of uniform diameter; a highly compressed plug of absorbent material in one extremity of said outer tube, and an inner cardboard tube of uniform diameter arranged to slide within said outer tube to force said plug therefrom." Such claims were rejected by the Examiner as being met by the patents to Ellis 1,131,349 and Roberson 1,191,736 and the patentee cancelled all claims relating to the applicator and on September 12, 1933 accepted the Patent 1,926,900 with but two claims, one to the tampon itself and one to the method of making it. At that time there was no pending application disclosing the applicator, and the patentee made no reservation of such claim nor did he give notice of intention to claim them in a later patent. On June 2, 1934 nearly nine months after issuance of Patent No. 1,926,900 the patentee filed an application not for a reissue of that patent in which the applicator in question was fully disclosed, but for a new and independent patent which he called a continuation of Patent No. 1,926,900, which application contained a duplication of that applicator and claims which in substance duplicate the claims which had been rejected by the Examiner and cancelled by the patentee. Compare Claim 1 of Patent No. 2,024,218 the second patent in suit with the abandoned Claim 9 of Patent No. 1,926,900.

The claims for the applicator of which Claim 9 was one having been rejected by the Patent Office and the patentee having acquiesced and cancelled that claim, it could not be revived in a reissued patent. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp. et al., 294 U.S. 477, 492, 55 S.Ct. 455, 79 L.Ed. 1005.

Certainly no such revival can be permitted in a new and independent patent, as in the case at bar, especially in view of the fact that the patentee made no reservation of any kind, and at the time of the issuance of Patent No. 1,926,900 there was not pending any application describing or claiming the applicator. The patentee on the grant of Patent No. 1,926,900 dedicated and abandoned to the public everything described therein as to the applicator, but not claimed. Elevator Supplies Co., Inc., v. Graham & Norton Co., 3 Cir., 44 F.2d 358; Ely Norris Safe Co. v. Mosler Safe Co., 2 Cir., 62 F.2d 524, 526.

For the reason stated the claims in suit of the second patent in suit are invalid.

The cases cited by the plaintiff do not relate to cases in which there was, as in the case at bar, an attempt to recapture claims which had been rejected by the Examiner, and cancelled by the patentee in the original patent before it was issued without any reservation.

The application for the second patent in suit No. 2,024,218 was not filed until June 2, 1934. In that application the patentee sought to recapture the subject matter of the applicator claims which he had cancelled from his earlier patent No. 1,926,900, which had issued on September 12, 1933. He had no application pending at that time disclosing the applicator.

The applications for Patent No. 1,926,900 and for Patent No. 2,024,218 were not copending at any time and I can find no authority to support plaintiff's contention that they are entitled to the filing date of Patent No. 1,926,900, November 19, 1931 and not the filing date of Patent No. 2,024,218, the second patent in suit, June 2, 1934.

While it is true that the patentee had the application for Patent No. 1,964,911, the first patent in suit, copending first with Patent No. 1,926,900 until it was issued on September 12, 1933, and subsequent to June 2, 1934 copending with Patent No. 2,024,218 the second patent in suit, the first patent in suit No. 1,964,911 did not serve as a link in the chain as to the applicator, because it did not disclose the applicator, but disclosed only the tampon.

The plaintiff is not helped by its contention that the patentee might have amended his application for Patent No. 1,-

964,911 the first patent in suit to cover the applicator. Whatever the patentee might have done is not the question. What we are concerned with is, what he did or did not do. Therefore, under R.S. § 4886 and R. S. § 4920, 35 U.S.C.A. § 31 and § 69, the claims of the Patent No. 2,024,218 the second patent in suit are invalid if their subject matter "was described in a printed publication in this or any foreign country" or was "on sale in this country" before June 2, 1932, that being "two years prior to his application."

The testimony of Dr. Haas the patentee given in another suit was stipulated as his testimony in the suit at bar and plaintiff also stipulated that the said testimony of Dr. Haas was true. Plaintiff further admitted that the applicator illustrated and described in the printed leaflet (Ex. B. B. Tab No. 10) is the same in all material respects as "the container and applicator" described and claimed in the second Haas patent in suit.

The testimony clearly shows that five thousand of the said printed leaflets were ordered by Dr. Haas and delivered to him in December 1931, and beginning at that time Dr. Haas said "nearly a thousand dozen" of the aforesaid applicators containing tampons were sent to hospitals and all over the United States· practically, as far east as Chicago, and Philadelphia, and Detroit and as far west as Los Angeles, to really see if it was a practical idea, if it conformed to things that needed to be conformed to, that would be considered good medical practice. Each half dozen of the said devices together with one of these printed leaflets was contained in a separate box. That accounts for the broadcasting of nearly two thousand of the leaflets. None of the recipients were enjoined to secrecy but all of the recipients were free to use them as they pleased, and they were not used by any of the recipients under the directions of the patentee the purpose of the distributor being to have the leaflet teach the use of the applicator as widely as possible.

■ No case has been cited nor have I found any in which such a leaflet has been held to be or not to be a printed publication, but considering the purposes for which such leaflets were distributed, and the large number of them that were so distributed, I can see no difference between them and trade catalogues, which have been held to be printed publications. Jockmus v. Leviton et al., 2 Cir., 28 F.2d 812; Sachs v. Hartford Electric Supply Co., 2 Cir., 47 F.2d 743, 745; O. K. Jelks & Son et al. v. Tom Huston Peanut Co., 5 Cir., 52 F.2d 4, 9; McGhee, et al. v. Le Sage & Co., Inc., 9 Cir., 32 F.2d 875, 876; Imperial Glass Co. v. A. H. Heisey & Co., 6 Cir., 294 F. 267, 269.

Plaintiff contends correctly that it has been held that neither the application file of a patent (Camp Bros. & Co. v. Portable Wagon Dump & Elevator Co., 7 Cir., 251 F. 603) nor matter appearing in a patent application as originally filed, but cancelled before the application issued as a patent (Fessenden v. Wilson et al., Cust & Pat. App., 48 F.2d 422) comprises a printed publication. It has also been held that a laboratory report (Dow Chemical Co. v. Williams Bros. Well Treating Corporation, 10 Cir., 81 F.2d 495), and a paper read before a Chemical Society (Dovan Chemical Corporation v. National Aniline & Chemical Co., Inc., 2 Cir., 292 F. 555) and a book of which not more than one copy had been printed or that such copy had been made available to the public were not printed publications but those cases do not seem to me to be in point as the leaflet in question was extensively distributed and its use unrestricted, and as easily obtainable as a trade catalogue.

■ The claims of the second patent in suit are invalidated by such printed publication.

The patentee not only gave away the devices of the second patent in suit in large numbers, but he also put them on sale in Bert Strickland's Drug Store at Denver, Colorado, in January 1932, over two years and four months before June 2, 1934, the filing date of the second patent in suit. This is clearly shown by the testimony of the patentee given in another suit, which was stipulated as his testimony in this suit, and which the plaintiff stipulated was true.

Plaintiff contends that the sale is not sustained by evidence that rises above probabilities, and that such evidence is not sufficient. I do not agree with that contention, on the contrary, the evidence leaves me without doubt.

Not only do we have the evidence of the patentee stipulated to be true, that the device was put on sale in January 1932, in Bert Strickland's Drug Store, Denver, Colorado, but it is corroborated by the employees in the Strickland Drug Store, who fix the date of some sales before the death of Mrs. Strickland, the wife of Bert Strickland,

who worked in the store, and her death is certified to have taken place on March 20, 1932. (Exh. z-1.)

▆ The plaintiff cannot escape the invalidating of the patents because they were sold only through one store, and that the sales were for the purpose of "trying it out from a merchandising standpoint."

▆ The sales by the patentee to Strickland and the sales by Strickland to customers was in no sense within the term experimental use, as defined in 'Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, at page 134, 24 L.Ed. 1000; Smith & Griggs Manufacturing Company v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L. Ed. 141, but were sales, and it is not a question of number, as one sale more than two years before June 2, 1934, would be sufficient to invalidate the patent. Consolidated Fruit-Jar Company v. Wright, 94 U.S. 92, 93, 24 L.Ed. 68; National Cash Register Co. v. American Cash-Register Co., 2 Cir., 178 F. 79.

▆ Claims 1, 2, 3 of the second patent in suit are invalid by reason of such sales.

▆ That there has been commercial success since the patent came into the hands of the plaintiff Tampax Incorporated is apparent, but it seems to me that such success was not due to the patent itself, but to the extremely efficient manner in which it has been placed on the market by Mr. Mann, the president of Tampax Incorporated, aided by frank advertising of the device in question due to a change in public psychology in relation to the more intimate type of product. Commercial success, however, does not prove invention, and can only be considered on the question of invention if it be in doubt, but I am not in doubt. Harvey Hubbell, Inc., v. General Electric Co., 2 Cir., 267 F. 564.

A decree may be entered in accordance with this opinion in favor of the defendants against the plaintiffs dismissing the complaint on the merits with costs.

Settle decree on notice, and submit proposed findings of fact and conclusions of law in accordance with this opinion.

On Motion for Order Requiring Plaintiffs to Pay Reasonable Expenses

▆ This is a motion for an order requiring plaintiffs to pay reasonable expenses, including reasonable attorney's fees, incurred in making proof of matters of fact set forth in paragraph 3 of the request for admission filed on or about October 17, 1940.

At the outset it should be noted that the requests numbered 1 and 2 were strictly requests for admission of facts, and they were admitted by the plaintiffs.

The third request for admission, however, which included four subdivisions, which need not be restated, contained the following general statement: "that beginning at a time more than two years prior to June 2, 1934 the filing date of the application for said Haas Patent No. 2,024,218, and more than two years prior to the filing of any application by the said Haas which disclosed said 'combined°container and applicator' as described and claimed in said Patent No. 2,024,218, and which was copending with the aforesaid application filed June 2, 1934." Then follow the subdivisions.

The general statement is not a mere request for admission of a fact.

The plaintiffs contend, and have at all times contended, that the filing date for this patent went back to November 19, 1931, the filing date of the original application, which eventuated into Patent No. 1,926,900, of which it is contended the patent in question is a continuation.

Furthermore, plaintiffs contend that the container and applicator were shown in the drawings of an intervening continuing application, which eventuated into Patent No. 1,964,911, which they contend is the link connecting the application for the Patent No. 2,024,218, with the original application, which eventuated into Patent No. 1,926,900, therefore, the request in question for admission was not solely a request for an admission of fact, but was a request for an admission as to a conclusion of law, which would have deprived the plaintiffs of the opportunity to litigate that which was one of the important questions of law, that I was required to determine, therefore, the motion is denied.