**UNISTRUT CORPORATION, Unistrut Products Company, and Charles W. Attwood, Plaintiffs,**

v.

**James F. POWER, Unistrut Service Company of New England, Power Products Company, Inc. and Power-Strut, Inc., Defendants.**

Civ. A. No. 54–961.

United States District Court
D. Massachusetts.

Dec. 18, 1958.

Cedric W. Porter, Heard, Smith, Porter & Chittick and Nicholas A. Pandiscio, Boston, Mass., for plaintiffs.

Arthur D. Thomson, Boston, Mass., and James F. Power, in pro. per., for defendants.

SWEENEY, Chief Judge.

In their bill of complaint the plaintiffs include five distinct causes of action and they will be treated as such. The actions center around the activities of both parties with respect to the production, promotion and sales of articles covered by patents numbered 2,345,650 issued on April 4, 1944, on an application filed on October 12, 1940 and 2,696,139 issued on December 7, 1954, on an application dated May 28, 1952. The complaint alleges (a) unfair competition on the part of the defendants, (b) infringement of the plaintiffs' patents and (c) infringement of plaintiffs' copyrights, (d) infringement of plaintiffs' trademark and (e) breach of contract by the defendants. Injunctions and an accounting of profits and damages are sought. The defendants filed a motion for a declaratory judgment attacking the validity of Patent No. 2,696,139 and this decision will also dispose of that motion.

Findings of Fact

The plaintiffs are Unistrut Corporation, the manufacturer of the Unistrut metal framing system, hereinafter referred to as the Corporation, Unistrut Products Company, hereinafter referred to as the Company, the national distributor, and Charles W. Attwood, the owner of the two patents in suit and president of the Corporation. Unistrut Corporation is the exclusive licensee of the patents in suit. The defendant James F. Power had been the exclusive New England distributor of Unistrut and, as such, did business under the name Unistrut Service Company of New England.

When, in 1952, the Company changed its franchise policy to grant only non-exclusive distributorships, Power entered into a non-exclusive agreement with the Company. But he became increasingly dissatisfied and in 1954 cancelled this agreement and established his own manufacturing and distributing organizations, Power-Strut, Inc., and Power Products Company, Inc.

The basic Unistrut patent relates "to building and structural elements for the construction of skeletonized reinforcing and supporting structures, ladders, scaffolding, rails, frames, struts and the like," and its object is "to provide improved means whereby structures of the indicated and other types, of great strength may be erected more quickly and easily than is now possible, with the expenditure of less effort and labor in the field, and without the necessity of drilling or forming the material."

Both the Unistrut and Power-Strut systems employ slotted channel members with inturned edges which are connected to each other by a clamping nut with grooves and teeth to receive the

inturned edge of the channel. The nut is backed by a coil spring to hold it in place and clamped by a threaded bolt which draws the nut tightly against the inturned edges of the channel member.

## Unfair Competition

Several months before he actually cancelled his agreement with the Company, Power began to take steps which eventually led to the establishment of the Power-Strut organization. He solicited other Unistrut distributors and with offers of more advantageous discounts persuaded four of them to join him. These four represented a total Unistrut market of about one million dollars annually. He prepared a catalog which listed, in addition to Power-Strut parts, Unistrut equivalent parts numbers and which included pictures of Unistrut installations which were not identified as such. He sub-contracted with Van Huffel Tube Company, a former Unistrut supplier, for the manufacture of channels and nuts.

Power-Strut channels are very similar in design, color and size to Unistrut channels. They differ in shape from Unistrut only in that the inturned edges of the latter are bevelled, as compared with the flat or rounded edge of Power-Strut. The original supply of Power-Strut channels consisted of those sizes which were the most popular of the Unistrut line. The original Power clamping nut was admittedly an exact duplication of the Unistrut nut. Even Power-Strut's parts numbers were, in part, assimilated from Unistrut; e. g. Unistrut's P–1000 was equivalent in size and shape to Power-Strut's PS–100.

 In considering the question of unfair competition I must apply the law as the Massachusetts Courts would apply it, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Fashion Originators' Guild of America v. Federal Trade Commission, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949, and under Massachusetts law the passing off of one's own goods as those of another with the result that the public is deceived, is clearly included within the definition

of unfair competition. Summerfield Co. of Boston v. Prime Furniture Co., 242 Mass. 149, 136 N.E. 396; Healer v. Bloomberg Bros., 321 Mass. 476, 73 N.E.2d 895; Man-Sew Pinking Attachment Corp. v. Chandler Mach. Co., D.C. Mass., 33 F.Supp. 950. Power set out to deceive and succeeded in deceiving the public. The listing of equivalent parts numbers and the very similarity between parts numbers created the impression that Power-Strut was merely a less expensive line of Unistrut. The fact that Power continued to list Unistrut Products Company of New England in the telephone book for several years undoubtedly helped to strengthen that impression. The plaintiff at the trial adduced evidence of at least two instances where former Unistrut customers had received Power-Strut installations, not knowing that they were not getting Unistrut products. Power's testimony that all Unistrut customers were notified of the divorce of Power from Unistrut is not supported by the evidence. While the defendant did mail a letter announcing the new Power line, the letter makes no mention of the completely different origins of Power and Unistrut.

 Many activities that are properly labelled "unfair competition" arise through ignorance of legal rights of others, through overzealous efforts to promote a product, or through mistaken belief in the line between fair and unfair competitive activities. But this case cannot be included in any of those categories. Here we have a well calculated plan, both in conception and in execution, to steal from the plaintiff much of its good will, to ride on the skirts of a reputation already established, to fool and mislead the public into believing that the defendants' products originated with the plaintiffs' and to divert into the defendants' own pockets the profits which would probably have accrued to the plaintiffs, except for the defendants' acts. These activities were unfair to the plaintiff as well as to the general public. They were dishonest. I find for the plaintiffs on this cause of action.

The plaintiffs have also argued that there has been a breach of the fiduciary duty owed by Power to Unistrut as a result of the agency relationship. But since no such allegation was included in the pleadings, I will disregard this argument except as it bears indirectly on the charge of unfair competition.

### Patent Infringement

The defendants allege with respect to the first patent, the basic Unistrut patent, No. 2,345,650, that their product does not infringe, but if it does infringe the patent, the latter is invalid, having been anticipated by the prior art.

As to the second patent, No. 2,696,139, they allege and seek a declaratory judgment to the effect that this patent is invalid.

The evidence on the issue of infringement of the first patent included a great deal of testimony about the shape of the inturned edge of Power-Strut channels. The experts disagreed whether the edge was flat or somewhat rounded and whether, in fact, it is possible to achieve a perfectly flat edge when rolling the channels. In the view that I take of this aspect of the case it is immaterial whether the edge is flat or rounded for I find that the departure from the plaintiffs' design in either case is too superficial to avoid infringement.

■ The law is well settled that where two devices perform substantially the same function in substantially the same way to achieve substantially the same result, there is infringement. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S. Ct. 854, 94 L.Ed. 1097; Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 and Machine Co. v. Murphy, 1877, 97 U.S. 120, 24 L. Ed. 935. The difficult question in all these cases, a question which cannot be answered by resort to formulae, is what degree of difference is necessary to constitute noninfringement of the patent.

■ As pointed out previously, the only difference between Unistrut and Power-Strut channels is in the shape of the inturned edge of the channel. There is no doubt that both perform the same function and in the same way, and equally efficiently. As a matter of fact, the very similarity of the two devices was the defendants' biggest selling point, and I find and rule that Power-Strut does infringe this patent.

The defendants argue alternatively that if Power-Strut infringes this Unistrut patent, the latter is invalid over the prior patents relied on by the defendants. With this contention I do not agree. While these patents [1] show channels of a shape similar to the Unistrut channel, they are all patents for concrete inserts. The advance embodied in the Unistrut patent lies in the combination of channel and nut and in the "skeletonized structure".

■ The second patent in issue is the so-called nut patent, Attwood Patent No. 2,696,139. The defendants admit that they did copy this Unistrut nut for a period of time; but in their counterclaim for a declaratory judgment they request that the court adjudge the patent to be invalid.

The attack on the validity of this patent is based primarily on the ground that the nut as claimed in this patent was "described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent" within the statutory bar of Sec. 102(b) of the Patent Act, 35 U.S. C.A. § 102(b).

On the issue of prior public use the evidence was conflicting. The defendants introduced nuts of the new type which they claimed had been extracted from installations erected before the critical date, May 28, 1951. For the plaintiff, the shop foreman of Unistrut Corporation testified, from production

1. U.S. to Jordahl, No. 1,155,243, Sept. 28, 1915; U.S. to Schaffert, No. 1,924,884, August 29, 1933; U.S. to Awbrey, No. 1,933,536, Nov. 7, 1933; Swiss to Vogt, No. 118,183, Dec. 16, 1926.

records, that these units were not commercially produced until after the critical date.

I am resting my decision on the defendant's exhibit II, a "Bulletin Letter" dated April 17, 1951, which was sent by the Company to Unistrut distributors and customers. The subject of this bulletin was "New Corrugating Type Unistrut Nut P–1010", and the following are excerpts from the letter:

"The *new Unistrut nut now being shipped* to you has higher holding power. * * *

"Improvements in the design of the Unistrut nut primarily include a deeper groove and a new serrated tooth arrangement that tests show have *practically doubled* its holding power * * *."

■ There is no disagreement that the nut referred to in the bulletin is the nut which is also the subject of Patent No. 2,696,139, but the plaintiffs say that the circular "was merely the announcement of an enthusiastic sales manager", and "his statement that the nut was currently being shipped out to distributors was simply not true." However, I do find that the circular is a "printed publication" within the meaning of Section 102(b). Tampax, Inc. v. Personal Products, D.C.E.D.N.Y., 38 F.Supp. 663, affirmed 2 Cir., 123 F.2d 722, certiorari denied 316 U.S. 665, 62 S.Ct. 946, 86 L.Ed. 1741. The bulletin was widely distributed and its use unrestricted. Furthermore, the description of the nut given in the circular was such that one skilled in the art could understand the nature of the invention and carry it into practical use. I further find that this was a covering letter referring to a nut being shipped simultaneously with the letter. Otherwise, the letter means nothing. I further find that this was a public use within the meaning of the statute.

The claims of the so-called nut patent are invalidated by their publication and use more than one year prior to the date of the application for the patent in issue.

The question of the amount of damages by reason of the infringement of patent No. 2,345,650 will be referred for an accounting.

### Copyright Infringement

The plaintiffs charge the defendants with infringing copyrights on their catalogs Nos. 3 and 700.

■■ The defendants admit tracing one illustration from Unistrut's catalog No. 700 and reproducing it on page 3 of their own catalog, No. 100. Inasmuch as a trade catalog is a composite work within the meaning of Section 3 of the Copyright Act, 17 U.S.C.A. § 3, it is infringed by the copying of a single illustration. Markham v. A. E. Borden Co., Inc., 1 Cir., 206 F.2d 199. Since the defendants deleted this admittedly infringing illustration from the second edition of their catalog No. 100, namely Power-Strut Catalog No. 100–1, and for the purpose of computing damages, I have further determined that a number of other illustrations in both editions of the defendants' catalog No. 100 and Power-Strut catalogs Nos. 200 and 300 are clearly copied from this Unistrut catalog. An examination of these books and the defendants' drawings reveals, for example, that the picture entitled "Tunnels" on page 5 of both No. 100 editions and on page E of the No. 300 catalog is an exact copy of the plaintiff's picture with the same caption on page 42 of catalog No. 700. Furthermore the defendants have copied a considerable amount of engineering data in all four of their catalogs. On all the evidence I, therefore, conclude that Power-Strut catalogs Nos. 100, 100–1, 200 and 300 infringe the copyright on the plaintiff's catalog No. 700.

With respect to the charges as regard the Unistrut Catalog No. 3, I find for the defendant. While the plaintiffs have produced abundant proof of copying from this catalog, they are nonetheless barred from maintaining this action and recovering any damages by the provisions of Section 13 of the Copyright Act. 17 U.S.C.A. § 13.

Section 13 requires that two *complete* copies of the copyrighted work be deposited promptly in the copyright office, and further provides that "no action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with." The certificate of registration shows that the copyright on this catalog was secured by publication in April, 1942. However, the catalogs in evidence display the notice "copyrighted 1942, 1943," and the plaintiff's witness Butler, the President of Unistrut Products Company, Inc., acknowledged that some material was added in subsequent editions of the No. 3 catalog. Since no evidence was adduced to show that these subsequent altered editions of catalog No. 3 were deposited in the Copyright Office and since therefore the Office does not have on deposit two *complete* copies of this catalog, I conclude that as respects this copyright the plaintiff cannot maintain the action. See Hoyt v. Daily Mirror, D.C., 31 F.Supp. 89.

There remains for consideration the question of damages. The statute governing damages to be awarded for copyright infringement (17 U.S.C.A. § 101(b) provides for the recovery of actual damages where they can be proven or, alternatively, for an award by the court in its discretion within the limits set down by the statute, $1 for each infringing copy made or sold by, or found in the possession of the defendants, which damages are to be no less than $250 nor more than $5,000 per infringement. Since each copying of the plaintiffs' catalog by each separate catalog of the defendants was a separate infringement, there are four infringements. Alter Co. v. A. E. Borden Co., D.C.Mass., 121 F. Supp. 941. The plaintiffs concede that they cannot prove actual damages as the defendant does not sell their catalogs and I shall therefore award as to each infringement statutory damages of $1 for each infringing catalog. As no evidence was presented with regard to the number of Power-Strut catalogs printed and distributed, I shall refer the case of the copyright damages to the same master as is appointed on the patent infringement damages for an accounting.

### Trademark Infringement

The plaintiffs allege infringement of their trademark "Unistrut" by the defendants' use of "Power-Strut."

I note at the outset that "strut" is a generic term which is descriptive of both the plaintiffs' and the defendants' product. The word is defined as follows:

"Any bar or piece designed to resist pressure or compressive stress, in the direction of its length, as a member of frame, structure, or machine." Webster's New International Dictionary, 2d ed., 1935.

There are many cases which have held that it is not infringement for a manufacturer to use as part of the trademark which designates his product a descriptive or generic word which has already been adopted by another, provided that the competing marks taken as a whole are clearly distinguishable. See e. g. Dixi-Cola Laboratories v. Coca Cola Co., 4 Cir., 117 F.2d 352, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505, and cases cited therein.

Are these two marks clearly distinguishable? I find that they are. The plaintiffs employ a fanciful prefix with the generic word "strut" and spell it as one word, while the defendants have combined the family name of the individual defendant with "strut" and connected the two words by a hyphen. The result is that the marks are clearly dissimilar in appearance, sound and meaning. Moreover, the evidence showed that several other manufacturers use the word "strut" in combination with a corporate or other descriptive term for products which perform a similar function as those involved in this case or, at least are used in the same or a related industry. For example, "Proctor-Strut" is the trademark of Proctor & Schwartz for framing members; the Tube-Strut Divi-

sion of Tubular Structures Corporation of America uses the word "Tube-Strut" and "Grip-Strut" is the registered trademark of the Globe Company.

My conclusion therefore is that there was no infringement of the plaintiffs' trademark.

### Breach of Contract

■ The distributorship agreement, dated October 22, 1953, under which the defendant was licensed to sell Unistrut products provided in part:

> "21. *Cancellation of Agreement* — * * * Privilege to use the name and word 'Unistrut' hereby is granted to DISTRIBUTOR who hereby agrees to discontinue the use of the name in any form including telephone listings, upon termination of this agreement."

The plaintiffs allege that the defendants, in violation of this contract, did continue to use the name Unistrut in their corporate name, advertising, invoices and telephone listing, after they terminated the agreement. The defendants admit these allegations but claim that this agreement was not supported by any consideration and is, therefore, invalid and unenforceable.

The contract in issue is identical to the contract it superseded except for the addition of the quoted clause and another paragraph not here involved. The defendants argue that since this contract confirmed rights previously enjoyed by the defendants, they received nothing from the plaintiff by this agreement of October 22, 1953. But this contention overlooks the fact that the defendants did receive the right to continue to represent Unistrut in the New England area.

Since the defendants admit the alleged breach of this contract and since their defense is wholly devoid of merit, I find for the plaintiff on this count.

### Conclusions of Law

1. The defendants are guilty of unfair competition.

2. The basic Unistrut Patent, No. 2,-345,650 is valid and infringed.

3. The Nut Patent, No. 2,696,139 is invalid by reason of prior publication and public use within the meaning of Section 102(b) of the Patent Act.

4. The plaintiffs' copyright on their catalog No. 700 was infringed by the defendants' catalogs Nos. 100, 100–1, 200 and 300.

5. The plaintiffs cannot maintain the action for copyright infringement of their catalog No. 3 as they have not fully complied with the requirements of Section 13 of the Copyright Act.

6. The defendants' trade-mark "Power-Strut" does not infringe "Unistrut".

7. The defendants did breach their contract with the plaintiff which contract was supported by ample consideration.

An injunction shall issue forbidding further unfair competition and further infringement of Patent No. 2,345,650, and the copyright on catalog No. 700, as detailed in paragraphs d, e and f of the plaintiffs' prayer for relief.

The plaintiffs may further have an accounting of all gains, profits and advantages derived by the defendants by their unfair competition and infringement of the above named patent and copyright, and the court appoints Melvin R. Jenney master to hear the accounting. The court retains for its own determination the issue of damages for breach of contract.

The defendants shall also pay the costs of this action, and the plaintiffs' attorneys' fee in an amount to be determined.

The plaintiff may prepare an order in conformity with the above.